Philip Mauriello Jr., Esq. (SBN 321227)
Arete Law A.P.C.
864 Grand Ave. #1050
San Diego, CA 92109
Telephone: (619) 693-6474
Email: phil@arete.law

Attorney for Plaintiff
ASHTON FORBES

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHTON FORBES, | Case No. 3:20-cv-00998-BAS-JLB |
| Plaintiff, | **FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |
| vs | |
| NICK MACCHIONE, FACHE, in his official capacity as Director of San Diego County Health and Human Services; HELEN ROBBINS-MEYER, in her official capacity as Chief Administrative Officer and Director of Emergency Services for the County of San Diego, DR. WILMA WOOTEN, in her official capacity as public health officer of San Diego County Health and Human Services, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY BOARD OF SUPERVISORS. | **1) VIOLATION OF THE CALIFORNIA'S POLICE POWER** <br> **2) VIOLATION OF CONSTITUTIONAL RIGHT TO PRIVACY** <br> **3) VIOLATION OF CONSTITUTIONAL RIGHT TO MOVE FREELY** <br> **4) VIOLATION OF CONSTITUTIONAL RIGHT TO PERSONAL MEDICAL DECISIONS** <br> **5) VIOLATION OF CAL. CONST. ART. 1 § 1 RIGHT TO LIBERTY** |
| Defendants. | |

# INTRODUCTION

In response to the coronavirus (COVID-19) emergency, Defendants have enacted numerous emergency regulations in an effort to stop the spread of this pandemic. Defendants originally enacted an order dated May 8th, 2020 which required any person over the age of two "when they leave their home or place of residence, shall wear a face covering whenever they are in a business or within six feet of another person who is not a member of their family or household."

With new evidence and data coming to light regarding the science and severity of this specific virus, it has become ever more prevalent the requirement to wear a facial covering is not effective in stopping the spread of COVID-19. As such, the requirement to wear a face mask is overbroad and violates fundamental rights of both the United States Constitution as well as the California Constitution.

## JURISDICTION AND VENUE

2.      This case raises claims under the First and Fourteenth Amendments of the U.S. Constitution and 42 U.S.C. §1983. This Court has subject-matter jurisdiction under 28 U.S.C. §1331 and §1343.

3.      This Court has supplemental jurisdiction over the claims asserted under California's Constitution, statutes, and regulations pursuant to 28 U.S.C. §1367.

4.      Venue is proper in the Southern District of California pursuant to 28 U.S.C. 1391(b)(1) and (2) because it is a District in which Defendants main offices, exercise their authority in their official capacities, have enforced, and have threatened to enforce those orders.

## PARTIES

5.      Plaintiff is citizen and resident of San Diego County.

6.      Defendant Helen Robbins-Meyer is made a party to this action in her official capacity as Director of Emergency Services for the County of San Diego is

sued herein in her official capacity to challenge the constitutionality of her office's Order of the Health Officer and Emergency Regulations, which went into effect on June 4, 2020.

7.    Defendant Nick Macchione is a made party to this action in his official capacity as Director of the San Diego County Health and Human Services Agency. Mr. Macchione is sued herein in his official capacity to challenge the constitutionality of his office's Order of the Health Officer and Emergency Regulations, which went into effect on June 4, 2020.

8.    Defendant Dr. Wilma Wooten is made a party to this action in her official capacity as public health officer of the San Diego County Health and Human Services Agency is sued herein in her official capacity to challenge the constitutionality of her office's Order of the Health Officer and Emergency Regulations, which went into effect on June 4, 2020.

9.    Defendant County of San Diego is a public agency of the State of California.

10.    Defendant San Diego County Board of Supervisors is a policy-making and supervisory body of the County of San Diego. Defendant San Diego County Board of Supervisors oversees and governs the San Diego County Health and Human Services Agency.

## FACTUAL ALLEGATIONS

11.    On or about April 30th, 2020, Defendants Nick Macchione, Helen Robbins-Meyer, and Dr. Wooten filed with Defendant County of San Diego "ORDER OF THE HEALTH OFFICER AND EMERGENCY REGULATIONS" pursuant to California Health and Safety Code sections 101040, 12017 5, and 12017 5 .5 (b) the Health Officer of the County of San Diego.

12.    The most recent version of this Public Health Order, under Section 9 of the "ORDER OF THE HEALTH OFFICER AND EMERGENCY REGULATIONS", which came into effect on June 4, 2020 ("Order") attached

herein as Exhibit 1 and incorporated herein by this reference[1], requires the Plaintiff (and all citizens of San Diego County over the age of two) may not "leave their home or residence" or come within 6 feet of another individual without having a mask or cloth covering of some kind covering their mouth and nose.

13.   San Diego County Website on Face Coverings states in part;

    a.   "Businesses must: Refuse service to anyone not wearing a face covering."

    b.   "In general, you must wear a face covering anywhere you come within six feet of others."[2]

14.   Plaintiff is a healthy individual.

### SAN DIEGO COUNTY MASK MANDATE

15.   Mandatory face masks are not to protect yourself; they are to protect others from infecting your own person. Defendant Wooten said on April 30, 2020, "When you wear a face covering, you protect those around you."[3]

16.   Mandatory mask use is based on the belief that many SARS-CoV-2 transmissions may be from asymptomatic patients.

17.   There is much fear, misinformation, and uncertainty on the deadliness of the COVID-19 outbreak. Many models used in the United States, and likely by Defendants, still to this day were based on extrapolating worst-case situations from case fatality rates in foreign countries, that themselves use varying methods to report deaths.

18.   The World Health Organization no longer recommends masks for any healthy individual unless they are caring for positive COVID-19 patients; "If you

---

[1] As of the date of this filing, the Order can be viewed online at https://www.sandiegocounty.gov/content/dam/sdc/hhsa/programs/phs/Epidemiology/HealthOfficerOrderCOVID19.pdf
[2] *See* https://www.sandiegocounty.gov/content/sdc/hhsa/programs/phs/community_epidemiology/dc/2019-nCoV/face-coverings.html.
[3] David Gotfredson, San Diego County residents required to wear face coverings in public starting May 1, CBS8, (May 1, 2020, 7:43AM), https://www.cbs8.com/article/news/health/coronavirus/san-diego-county-residents-required-to-wear-face-coverings-in-public-starting-may-1/509-4d1bfba7-6a18-42d8-8cf2-41f61b135d3d.

are healthy, you only need to wear a mask if you are taking care of a person with COVID-19."[4]

## DROPLETS, AIRBORNE, AND CONTACT PRECAUTIONS

19.     The common misperception is that this SARS-CoV-2 spreads by droplets. There is no evidence to support this is the main method of transmission.

20.     Aerosol droplets are significantly smaller than respiratory droplets and there is significant reduction in effectiveness of filtration in masks from droplet sized particles to aerosol sized ones.

21.     Several recent studies have argued that SARS-CoV-2 is airborne. One study put ferrets in cages near one another and found that; "Furthermore, a few naive indirect contact ferrets were positive for viral RNA, suggesting airborne transmission."[5]

22.     In a study titled "Airborne Transmission of SARS CoV 2: The World Should Face the Reality," states in part; "Hand washing and maintaining social distance are the main measures recommended by the World Health Organization (WHO) to avoid contracting COVID-19. Unfortunately, these measured do not prevent infection by inhalation of small droplets exhaled by an infected person that can travel distance of meters or tens of meters in the air and carry their viral content."[6]

## ASYMPTOMATIC CARRIERS

23.     March 15, 2020, Defendant Wooten stated in an interview; "If you don't have symptoms, that means that you cannot transmit it to other individuals. If

---

[4] When and how to use a mask, World Health Organization, https://www.who.int/emergencies/diseases/novel-coronavirus-2019/advice-for-public/when-and-how-to-use-masks (last visited May 29, 2020).
[5] Young-Il Kim et al., Infection and Rapid Transmission of SARS-CoV-2 in Ferrets, Cell Host & Microbe, (April 6, 2020), pg.1, https://doi.org/10.1016/j.chom.2020.03.023.
[6] Lidia Morawska & Juni Cao, Airborne transmission of SARS- CoV-2; the world should face the reality, Environmental International, (April 10, 2020), pg. 1, https://doi.org/10.1016/j.envint.2020.105730.

you are not actively displaying symptoms, the thinking right now is you cannot spread that to another person."[7]

24.     The next day on March 16, 2020, Defendant Wooten further stated; "People think that if you don't have symptoms, you can transmit the disease….There are studies going on where asymptomatic people are being tested to determine if that in fact is true, but we do not have the results of those research data at this time."

25.     A study completed in the Chinese city of Wuhan, found no new cases of people suffering from COVID-19 after testing the almost the entire population of 11 million citizens. The study tested 9.9 million citizens. Out of the 9.9 million only 300 were found to be asymptomatic carriers of the virus. The study also found the asymptomatic carriers had been found not to be infectious.[8]

26.     Plaintiff has been informed there are currently no confirmed asymptomatic positives after hundreds of surveillance tests.

27.     Plaintiff has also been informed that UCSD asymptomatic surveillance testing has a 1/4000 positive rate.

28.     A study of a supposed asymptomatic carrier showed they did not transmit the virus to any of the 455 people exposed to them.[9]

29.     The specificity of one of the most accurate tests, the Cepheid Xpert, is between 96-100% with a 95% confidence interval.[10]

30.     Even if the true specificity were 99.9% that would be equal to 1 false positive for every 1000.

---

[7] Jill Castellano, San Diego officials give inconsistent, confusing COVID-19 statements, iNewsource, (April 15, 2020), https://inewsource.org/2020/04/15/san-diego-officials-give-inconsistent-confusing-covid-19-statements/.

[8] Lusha Zhang et al., No new COVID sufferers, 300 asymptomatic, after Wuhan-wide tests, Reuters, (June 2, 2020), https://uk.reuters.com/article/uk-health-coronavirus-china-wuhan/no-new-covid-sufferers-300-asymptomatic-after-wuhan-wide-tests-idUKKBN23915T.

[9] Ming Gao et al., A study on infectivity of asymptomatic SARS-CoV-2 carriers, Respiratory Medicine (May 13, 2020), pg. 1, https://doi.org/10.1016/j.rmed.2020.106026.

[10] Maryanne Ibrahim BS et al., High Sensitivity and Specificity of the Cepheid Xpert HIV-1 Qualitative Point-of-Care Test Among Newborns in Botswana, Jaids Journal Of Acquired Immune Deficiency Syndrome, (August 15, 2017), Vol. 75 Issue 5 p. e128-e131, https://journals.lww.com/jaids/Fulltext/2017/08150/Brief_Report__High_Sensitivity_and_Specificity_of.16.aspx.

31.     Actual asymptomatic positives are statistically within the margin of error.

## EFFECTIVENESS OF MASKS IN PREVENTING THE SPREAD OF COVID-19

32.     The Center for Disease Control does not federally require wearing a mask only recommends it.[11]

33.     The United States Surgeon General tweeted on February 29th, 2020, "Seriously people – STOP BUYING MASKS! They are NOT effective in preventing the general public from catching #Coronavirus, but if healthcare providers can't get them to care for sick patients, it puts them and our communities at risk!"[12]

34.     The CDC tweeted on February 27, 2020; "CDC does not currently recommend the use of facemasks to help prevent novel #coronavirus. Take everyday preventive actions, like staying home when you are sick and washing hands with soap and water, to help slow the spread of respiratory illness."[13]

35.     The California Department of Public Health echoed this sentiment stating, "There is limited evidence to suggest that use of cloth face coverings by the public during a pandemic could help reduce disease transmission. Their primary role is to reduce the release of infectious particles into the air when someone speaks, coughs, or sneezes, including someone who has COVID-19 but feels well."[14]

36.     In an article dated April 1st, 2020, Dr. Brosseau  wrote in her commentary, "We do not recommend requiring the general public who do not have

---

[11] Cloth Face Coverings: Questions and Answers, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cloth-face-cover-faq.html (last visited May 29, 2020).
[12] U.S Surgeon General, Twitter Post on February 29, 2020, https://twitter.com/surgeon_general/status/1233725785283932160 (last visited May 28, 2020).
[13] CDC Twitter Post on February 27, 2020, https://twitter.com/CDCgov/status/1233134710638825473 (last visited May 29, 2020).
[14] California Department of Health (April 1, 2020) https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Face-Coverings-Guidance.aspx.

symptoms of COVID-19 like illness to routinely wear cloth or surgical masks because: there is no scientific evidence they are effective in reducing the risk of SARS-CoV-2 transmission, their use may result in those wearing the masks to relax other distancing efforts because they have a sense of protection, and we need to preserve the supply of surgical masks for at-risk healthcare workers." Dr. Brosseau went on to say, "Sweeping mask recommendations—as many have proposed—will not reduce SARS-CoV-2 transmission, as evidenced by the widespread practice of wearing such masks in Hubei province, China, before and during its mass COVID-19 transmission experience earlier this year. Our review of relevant studies indicates that cloth masks will be ineffective at preventing SARS-CoV-2 transmission, whether worn as source control or as PPE."[15]

37.   In the same study, it was concluded, "Cloth masks are ineffective as source control and PPE, surgical masks have some role to play in preventing emissions from infected patients, and respirators are the best choice for protecting healthcare and other frontline workers, but not recommended for source control. These recommendations apply to pandemic and non-pandemic situations."[16]

38.   In an article from the New England Journal of Medicine it was stated; "We know that wearing a mask outside of health care facilities offers little, if any protection from infection." The article goes on to say that "The chance of catching COVID-19 from a passive interaction is minimal…the desire for wide-spread masking is a reflexive reaction to anxiety over the pandemic."[17]

39.   The studies and conclusions put forth above show that the science and data do not support the use of masks to stop the spread of COVID-19. Because it has been shown they do effectively stop the spread, the requirement of the recent

---

[15] Lisa M. Brosseau ScD & Margaret Sietsema PhD, Commentary: Masks-for-all for COVID-19 not based on sound data, Center for Infectious Disease Research and Policy, (April 1, 2020), https://www.cidrap.umn.edu/news-perspective/2020/04/commentary-masks-all-covid-19-not-based-sound-data.
[16] Id.
[17] Michael Klompas, M.D. et al., Universal Masking in Hospitals in the Covid-19 Era, The New England Journal of Medicine, (May 21, 2020), https://www.nejm.org/doi/pdf/10.1056/NEJMp2006372?articleTools=true.

Order by Defendants is not reasonably necessary or narrowly tailored to accomplish its purported goal of stopping the spread of COVID-19. A "better safe than sorry" approach is overbroad and an undue restriction on Plaintiff's Constitutional rights.

**CLAIMS FOR RELIEF**
**FIRST CLAIM:**
**VIOLATION OF CALIFORNIA'S POLICE POWER**
*(By Plaintiff Against All Defendants)*

40.    The allegations contained in all preceding paragraphs are incorporated herein by reference.

41.    The 10th Amendment of the Constitution provides that powers not delegated to the United States by the Constitution, and not prohibited by it to the states, are reserved to state or to the people.

42.    The Fourteenth Amendment of the United States Constitution states that no State shall "deprive any person of life, liberty or property, without due process of law." U.S Const. amend XIV § 1.

43.    Defendants state their authority to enact the measures in their Order comes from comes from California Health and Safety Code Sections 10140, 120175, and 120175.5.

44.    The commonality between these sections is in the phrasing of what is "necessary" to prevent the spread of a communicable or infectious disease. As presented by the Plaintiff, the requirement to wear a facial covering is not necessary or effective in preventing the spread of COVID-19.

45.    The general power of governing, possessed by the states but not only by the federal government, is called the police power. *National Federation of Independent Business v. Sebelius*, 567 U.S. 519, 132 (2012). The police power is inherent in a government to enact laws within constitutional limits to promote the health, safety, morals, order, and general welfare of society. *See In re Ramirez*, 193 Cal. 633, 226 P. 914, 34 A.L.R. 51 (1924); *In re Marriage of Kelkar*, 229 Cal.

App. 4th 833, 176 Cal. Rptr. 3d 905 (2d Dist. 2014); *Galyon v. Municipal Court of San Bernardino Judicial Dist., San Bernardino County*, 229 Cal. App. 2d 667, 40 Cal. Rptr. 446 (4th Dist. 1964).

46.     The police power, though broad and powerful, is not without its limits. While the police power can be used by a state to promote the public health, safety, morals, and general welfare, it must not amount to an improper or arbitrary infringement of the constitutional rights of individuals. *Bacich v. Board of Control of California*, 23 Cal. 2d 343, 144 P.2d 818 (1943). Our system does not tolerate unrestrained overriding of the rights of individuals in the name of the police power. *Pac. Emp. Ins. Co. v. Indus. Comm'n*, 219 Cal. App. 2d 634, 640, 33 Cal. Rptr. 442, 446 (Ct. App. 1963).

47.     While there is a large amount of discretion delegated to public health officials to protect the public health, their actions are still reviewable by court to ensure that do not arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations. *Jew Ho v. Williamson*, 103 F. 10, 19 (C.C.N.D. Cal. 1900).

48.     The question of whether or not the exercise of police power is valid depends on the question of whether the acts are reasonable and free of oppression. *State Sav. & Commercial Bank v. Anderson*, 165 Cal. 437, 132 P. 755 (1913), aff'd, 238 U.S. 611, 35 S. Ct. 792, 59 L. Ed. 1488 (1915).  The measures adopted under the authority of the police power must be <u>reasonably necessary to accomplish such a purpose and narrowly tailored</u>. *Wholesale Tobacco Dealers Bureau of Southern California v. National Candy & Tobacco Co.*, 11 Cal. 2d 634, 82 P.2d 3, 118 A.L.R. 486 (1938). *See also Publius v. Boyer-Vine,* 237 F. Supp. 3d 997 (E.D. Cal. 2017) (construing California statute). It is apparent based on the data presented by the Plaintiff that the requirement to wear a facial covering does not accomplish the purpose of stopping the spread of COVID-19, nor is it narrowly tailored to do so.

49.     The police power must ordinarily be applied to existing conditions. *Skalko v. City of Sunnyvale*, 14 Cal. 2d 213, 93 P.2d 93 (1939). However, based on the factual analysis above, the existing conditions do not warrant a facial covering to prevent the spread of COVID-19.

50.     Defendants have thus gone beyond their authority to enact what is "necessary" to prevent the spread of COVID-19 because the science does not support the argument that facial coverings are effective in preventing the spread of this contagious disease.

51.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to declaratory relief and permanent injunctive relief invalidating or restraining enforcement of the Order.

52.     Plaintiff found it necessary to engage the services of private counsel to vindicate their rights under law. Plaintiff is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

## SECOND CLAIM:
## VIOLATION OF CONSTITUTIONAL RIGHT TO PRIVACY
### *(By Plaintiff Against All Defendants)*

53.     The allegations contained in all preceding paragraphs are incorporated herein by reference.

54.     Section 9 of Defendants' Order requires any individual over the age of two and without any precluding health condition to wear a facial covering once they leave their residence.

55.     The Fourteenth Amendment of the United States Constitution states that no State shall "deprive any person of life, liberty or property, without due process of law." U.S Const. amend XIV § 1.

56.     Section 29 of Defendants' Order states that any individual who violates the Order is "subject to fine, imprisonment, or both."

57.     There exists a number of "penumbras" in the Constitution which create zones of privacy. *Griswold v. Connecticut*, 381 U.S. 479, 484, 85 S. Ct. 1678, 1681, 14 L. Ed. 2d 510 (1965).

58.     "[G]overnmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." *Id.* at 485.

59.     The Order created and enforced by Defendants is sweeping and unnecessarily broad as it is not based on science or data which shows that facial coverings are not effective in stopping the spread of COVID-19.

60.     As such, the mask mandate is overbroad and unnecessary and invades Plaintiff's constitutional right to privacy by forcing him to wear a facial covering. Further, the Order violates Plaintiff's Fourteenth Amendment rights under the Constitution by depriving him of his right to privacy without due process.

61.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to declaratory relief and permanent injunctive relief invalidating or restraining enforcement of the Order.

62.     Plaintiff found it necessary to engage the services of private counsel to vindicate their rights under law. Plaintiff is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

## THIRD CLAIM:

## VIOLATION OF CONSTITUTIONAL RIGHT TO MOVE FREELY
### (*By Plaintiff Against All Defendants*)

63.     The allegations contained in all preceding paragraphs are incorporated herein by reference.

64.      Though not expressly found in the Constitution, the right to "travel" or move freely, is an inherent freedom granted to the citizens. *Saenz v. Roe*, 526

U.S. 489, 498, 119 S. Ct. 1518, 1524 (1999).  It is "a virtually unconditional personal right, guaranteed by the Constitution to us all." *Shapiro* v. *Thompson*, 394 U.S. 618, 22 L. Ed. 2d 600, 89 S. Ct. 1322 (1969).

65.    The right to free movement and travel is a right that all citizens are free to travel "uninhibited by statutes, rules or regulations, which unreasonably burden or restrict their movement." People v. Moran, 1 Cal. 5th 398, 405, 376 P.3d 617, 622 (2016). Further, the right to intrastate travel has been recognized as a basic human right protected by Article 1, Sections 7 and 24 of the California Constitution.

66.    When asserting a facial challenge, a party seeks to vindicate not only his own rights, but those of others who may also be adversely impacted by the statute in question. See S*ecretary of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 955, 81 L. Ed. 2d 786, 104 S. Ct. 2839 (1984).

67.    The requirement of Plaintiff to wear a facial covering in public when not in his residence restricts his right to travel within the County by forcing him to make a decision between wearing a facial covering which provides no medical benefit and in fact creates other collateral health risks, or remain a prisoner in his own home. Either choice violates essential constitutional rights of the Plaintiff.

68.    This choice is made by thousands of San Diego County residents every single day, thus violating not only Plaintiff's rights but the rights of all citizens in the County.

69.    Forcing Plaintiff to make a choice between violating his right to travel and move freely or his right to privacy violates his rights under the Fourteenth Amendment, Section 1 of the United States Constitution.

70.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to declaratory relief and permanent injunctive relief invalidating or restraining enforcement of the Order.

71.     Plaintiff found it necessary to engage the services of private counsel to vindicate their rights under law. Plaintiff is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

## FOURTH CLAIM:
## VIOLATION OF CONSTITUTIONAL RIGHT TO PERSONAL MEDICAL DECISIONS
### *(By Plaintiff Against All Defendants)*

72.     The allegations contained in all preceding paragraphs are incorporated herein by reference.

73.     The Defendants' Order mandates the wearing of a facial cover as either a way to protect the wearer or those around them. The distinction is unclear, and the science does not support either assertion.

74.     "'The right to one's person may be said to be a right of complete immunity; to be let alone.'" *Union Pac. R. Co. v. Botsford*, 141 U.S. 250, 251, 11 S. Ct. 1000, 1001, 35 L. Ed. 734 (1891).

75.     A competent person possesses the right to decline unwanted medical treatment if they so choose. *Cruzan by Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261, 278 (1990).

76.     The Order forces Plaintiff to make a medical choice for his person by requiring the wearing of a facial covering when in public. As an informed citizen, Plaintiff understands the wearing of a facial covering does not protect him from COVID-19 nor does it protect others in his immediate vicinity.

77.     Forcing Plaintiff to wear a facial covering in public or in businesses violates his rights under the Fourteenth Amendment by depriving him of the liberty to make medical decisions for himself.

78.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to declaratory relief and permanent injunctive relief invalidating or restraining enforcement of the Orders.

79.    Plaintiff found it necessary to engage the services of private counsel to vindicate their rights under law. Plaintiff is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

**FIFTH CLAIM:**
**VIOLATION OF CAL. CONST. ART. 1 § 1 RIGHT TO LIBERTY**
*(By Plaintiff Against All Defendants)*

80.    The allegations contained in all preceding paragraphs are incorporated herein by reference.

81.    Since 1879, the California Constitution has provided intrinsic and unalienable rights and liberties to its citizens. Chief among those rights and liberties are those found in Article 1 of the California Constitution. Article 1, Section 1 of the California Constitution provides in pertinent part:

> All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.

82.    Defendants Order has interfered with Plaintiff's rights and liberties under Article 1, Section 1 of the California Constitution by depriving him of his liberty to freely move about in public, as well as an invasion of the privacy of his person by requiring him to wear a facial covering that does not accomplish the state's goal of stopping the spread of COVID-19.

83.    The burden is on the Defendants to prove the reasonableness of the Order in the face of overwhelming scientific evidence that facial coverings are not

reasonably necessary, or a narrowly tailored regulation required to prevent the spread of COVID-19.

84.     Plaintiff has suffered and will continue to suffer harm to his constitutional rights unless Defendants are enjoined from continuing to enforce their Order.

85.     Plaintiff has found it necessary to engage the services of private counsel to vindicate his rights under the law. Plaintiff is therefore entitled to an award of attorney fees and costs pursuant to California Code of Civil Procedure § 1021.5.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

1.     For an order and judgement providing injunctive and declaratory relief;

2.     An order permanently enjoining and prohibiting Defendants from enforcing Section 9 of their Order requiring the use of a facial covering when in public;

3.     Award Plaintiff costs and attorneys' fees;

4.     Award Plaintiff any further relief to which they may be entitled and such other relief as this Court may deem just and proper; and

5.     That this Court retain jurisdiction as necessary to enforce the Court's orders.

Dated: June 5, 2020                         Respectfully submitted,


                                            /s/Philip Mauriello Jr.
                                            Philip Mauriello Jr., Esq.
                                            (CA Bar No. 321227)
                                            Arete Law A.P.C.
                                            phil@arete.law
                                            864 Grand Ave. #1050
                                            San Diego, CA 92109
                                            Telephone: (619) 693-6474
                                            *Attorney for the Plaintiff*
                                            *Ashton Forbes*

# Exhibit 1



# County of San Diego

| NICK MACCHIONE, FACHE | **HEALTH AND HUMAN SERVICES AGENCY** | WILMA J. WOOTEN, M.D. |
|---|---|---|
| AGENCY DIRECTOR | PUBLIC HEALTH SERVICES<br>3851 ROSECRANS STREET, MAIL STOP P-578<br>SAN DIEGO, CA 92110-3134<br>(619) 531-5800 • FAX (619) 542-4186 | PUBLIC HEALTH OFFICER |

## ORDER OF THE HEALTH OFFICER
## AND EMERGENCY REGULATIONS
(Effective June 4, 2020)

Pursuant to California Health and Safety Code sections 101040, 120175, and 120175.5 (b) the Health Officer of the County of San Diego (Health Officer) **ORDERS AS FOLLOWS**:

Effective 12:00 a.m. on Thursday, June 4, 2020 and continuing until further notice, the following will be in effect for San Diego County (county):

1. All persons are to remain in their homes or at their place of residence, except for employees or customers travelling to and from essential businesses, reopened businesses, or essential activities as defined in section 21, below, or to participate in individual or family outdoor activity as allowed by this Order.

2. All public or private "gatherings," as defined in section 21 below, are prohibited.

3. All businesses not meeting the definition of essential business or reopened business in section 21 below are referred to in this Order as "non-essential businesses" and shall be and remain closed for the duration of this Order. All essential businesses and reopened businesses must comply with the requirements of this Order. Notwithstanding the foregoing, a non-essential business may remain open if its employees and owners can provide its services from home, including by telecommuting, without direct contact with the public.

4. All public or private schools, colleges, and universities shall not hold classes or other school activities where students gather on the school campus, except for research-related activities in colleges and universities, where necessary to train students who will serve as essential workers and when providing childcare or daycare services provided they conform to the requirements of section 5, below.  Parents of minor children shall take steps to ensure said children are not

participating in activities prohibited by this Order.

5. Child daycare and child care providers shall operate under the following conditions: i) child care should be carried out in stable groups of 12 (unless a lower number is required by a facility's licensing requirements) or fewer ("stable" means that the same 12 or fewer children are in the same group each day);  ii) children should not change from one group to another; iii) if more than one group of children is cared for at one facility, each group should be in a separate area;  iv) groups should not mix with each other; and v) childcare providers should remain solely with one group of children, to the extent possible. Employees of such businesses, and the children being cared for, are not required to wear face coverings as described in section 9 while present at the daycare of child care facility.  Child daycare and childcare providers shall establish health check and temperature screening requirements to ensure children and employees with a temperature of 100 degrees or above do not enter the facility. Restroom and other surfaces children regularly contact shall be sanitized with a disinfectant effective against coronavirus on a regular schedule and between groups occupying a particular area.

6. "Non-essential personnel," as defined in section 21 below, are prohibited from entry into any hospital or long-term care facility.  All essential personnel who are COVID-19 positive or show any potential signs or symptoms of COVID-19 are strictly prohibited from entry into hospitals or long-term care facilities. Notwithstanding the foregoing, individuals requiring medical care for COVID-19 or related conditions may be admitted to hospitals or other medical facilities if the hospital or medical facility is appropriate for treating COVID-19 and has adequate precautions in place to protect its patients, medical personnel and staff.

7. Hospitals and healthcare providers, including dentists shall:
    a. Take measures to preserve and prioritize resources; and,
    b. May authorize and perform non-emergent or elective surgeries or procedures based on their determination of clinical need and supply capacity, and where consistent with State guidance.
    c. Nothing in this Order shall prevent physicians and other healthcare providers from conducting routine preventive care provided it conforms to any applicable State guidance.
    d. Nothing in this Order shall prevent dentists or dental hygienists from conducting routine preventive care provided it conforms to any applicable State guidance.

ORDER OF THE HEALTH OFFICER AND EMERGENCY REGULATIONS

8. Hospitals, healthcare providers, and commercial testing laboratories shall report all COVID-19 test results to the Public Health Officer immediately after such results are received.

9. All persons two year old or older who are present in the county shall have possession of a face covering described in California Department of Public Health Face Covering Guidance issued on April 1, 2020, (available at: https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Face-Coverings-Guidance.aspx ), when they leave their home or place of residence, shall wear the face covering whenever they are in a business or within six feet of another person who is not a member of their family or household. Persons with a medical or mental health condition, or developmental disability that prevents wearing a face covering shall be exempt from this requirement.

10. All essential businesses that allow members of the public to enter a facility must prepare and post a "Social Distancing and Sanitation Protocol" on the form available at: https://www.sandiegocounty.gov/content/dam/sdc/hhsa/programs/phs/Epidemiology/covid19/SOCIAL_DISTANCING_AND_SANITATION_PROTOCOL_04022020_V1.pdf ), or on a form required by another governmental entity requiring substantially similar information, for each of their facilities open to the public in the county. The Social Distancing and Sanitation Protocol must be posted at or near the entrance of the relevant facility, and shall be easily viewable by the public and employees. A copy of the Social Distancing and Sanitation Protocol must also be provided to each employee performing work at the facility. All essential businesses shall implement the Social Distancing and Sanitation Protocol and provide evidence of its implementation to any authority enforcing this Order upon demand. The Social Distancing and Sanitation Protocol must ensure all required measures are implemented and must identify and require measures necessary to implement social distancing are implemented at each facility that will ensure social distancing and sanitation at that particular facility. If the measures identified and implemented are not effective in maintaining proper social distancing and sanitation, the business shall promptly modify its Social Distancing and Sanitation Protocols to ensure proper social distancing and sanitation. Any business that fails to successfully implement social distancing and sanitation may be required to close.

11. All reopened businesses, with the exception of restaurants providing dine-in services, must prepare and post a "Safe Reopening Plan" on the form available at:https://www.sandiegocounty.gov/content/dam/sdc/hhsa/programs/phs/Epidemiology/covid19/Community_Sector_Support/BusinessesandEmployers/SafeReopeningPlanTemplate.pdf for each of their facilities in the county. Restaurants providing dine-in services must prepare

ORDER OF THE HEALTH OFFICER AND EMERGENCY REGULATIONS

and post a "COVID-19 Restaurant Operating Protocol" on the form available at

https://www.sandiegocounty.gov/content/dam/sdc/deh/fhd/food/pdf/covid19sdrestaurantoper
atingprotocol_en.pdf for each restaurant in the county. The Safe Reopening Plan or COVID-
19 Restaurant Operating Protocol must be posted at or near the entrance of the relevant facility,
and shall be easily viewable by the public and employees. A copy of the Safe Reopening Plan
or COVID-19 Restaurant Operating Protocol must also be provided to each employee
performing work at the facility. All reopened businesses shall implement the Safe Reopening
Plan or COVID-19 Restaurant Operating Protocol and provide evidence of its implementation
to any authority enforcing this Order upon demand. The Safe Reopening Plan or COVID-19
Restaurant Operating Protocol must ensure all required measures are implemented. If the
measures identified and implemented are not effective in maintaining proper social distancing
and sanitation, the business shall promptly modify its Safe Reopening Plan or COVID-19
Restaurant Operating Protocol to ensure proper social distancing and sanitation. Any business
that fails to comply with its Safe Reopening Plan or COVID-19 Restaurant Operating Protocol
shall immediately close.

12. When the State of California has issued an industry guidance with mandatory and/or suggested
measures to be implemented by a particular type of business or industry, a reopened business
must include all mandatory measures as part of its Safe Reopening Plan. The reopened
business shall include all suggested measures necessary to maintain proper sanitation,
employee screening, social distancing and facial coverings. Any mandatory measures required
by this Order must also be included in the Safe Reopening Plan.

13. All restaurants that allow dine-in services shall also be required to ensure their customers
comply with all of the following measures and shall immediately close if they are not able to
do so:
   a. Customers shall not stand in the restaurant except in the reception area while waiting
      for a table or to pick up take-out food. If customers cannot be socially distanced in the
      reception area they shall wait in their cars or outside of the restaurant in a line with six
      feet between each customer. All members of the party must be present before seating
      and the host must bring the entire party to the table at one time. The customers allowed
      at a table are limited to members of a single household or customers who have asked to
      be seated together at the time a table is requested.
   b. Customers shall be allowed in a restaurant only if they are dining in the restaurant or
      are picking up take-out food.

ORDER OF THE HEALTH OFFICER AND EMERGENCY REGULATIONS

    c. No food or beverages shall be served to or consumed by a customer who is not seated at a table designated by the restaurant for dining.

    d. The bar area of a restaurant may be used for table service of food.  Alcoholic drinks shall only be served as part of food service.

    e. Customers shall wear face coverings at all times other than while at a table.

    f. Tables designated for dining shall be six feet apart, or separated by barriers or partitions that extend above the heads of customers while seated.  Customer shall not be allowed to bring additional chairs to the table that interfere with the six foot separation.

    g. Shared entertainment items such as board games, arcade games and vending machines are prohibited and customers shall not have access to game and entertainment areas such as pool tables or darts.

    h. Any customer that refuses to comply with this section shall be subject to enforcement per Health and Safety Code section 120295.

14. Places of Worship – Effective May 27, 2020, religious services and cultural ceremonial activities may be conducted in conformance with the State Guidance pursuant to sections 11 and 12, above.  Given the high risk of this activity, outdoor ceremonies are encouraged and vulnerable members of the population (over 65 years old, compromised immune system or underlying condition) are strongly encouraged to participate through streaming or some other form of remote technology.

15. Each essential business and reopened business shall:

    a. Require all employees to wear face coverings as described in section 9 above; and,

    b. Shall conduct temperature screening of all employees prohibiting employees with a temperature of 100 degrees or more from entering the workplace.  Symptom screening (prohibiting employees from entering if they exhibit symptoms as described by the Centers for Disease Control and Prevention) may be used only when a thermometer is not available.

16. Outdoor Recreation

    a. Each public park and recreation area, shall operate in compliance with the Protocol found at https://www.sandiegocounty.gov/content/dam/sdc/hhsa/programs/phs/Epidemiology/covid19/parks-beaches-social-distancing-protocol.pdf created and implemented by the operator of the park. The public shall not congregate or participate in active sport activities at a park with the exception of members of a single family or household if authorized pursuant to the Protocol applicable to the park. Any park at which the

ORDER OF THE HEALTH OFFICER AND EMERGENCY REGULATIONS

Protocol requirements cannot be effectively implemented may be required to close.

b.  Campgrounds may be open provided a vacant campsite separates each occupied campsite and each campsite is occupied only by members of the same household.

c.  Recreational boating is allowed provided all occupants of a boat are from the same household.

d.  For Beaches Only - All parking lots at public beaches shall be closed. Beaches shall be used for walking, running, hiking, equestrian or bicycle riding (where allowed) and for passive activities such as sitting and sunbathing provided all persons on the beach practice social distancing, other than members of the same household. The public shall not congregate or participate in active sport activities on beaches. Swimming, body surfing, boogie boarding, surfing, kite surfing, paddle boarding, kayaking, snorkeling and scuba diving from the shore may be allowed in the ocean and bays connected thereto. Beaches where social distancing requirements cannot be effectively implemented shall close. All other restrictions applicable to beaches pursuant to other sections of this Order shall remain in effect.

e.  To enhance recreational opportunities in the county, private and public golf courses and, other public or private outdoor recreational facilities (other than community pools per State order), including recreational equipment (such as bicycle, boat, kayak, equestrian and surfboard) rentals may be open for limited use.

    i.  The owner or operator of a golf course shall complete, post and fully implement a Golf Course Physical Distancing & Safety Plan for San Diego County. Golf courses shall conduct temperature screening of all employees, and anyone with a temperature of 100 degrees or higher shall not be permitted to enter the facility.

    ii.  The owner or operator of an outdoor recreational facility shall limit use of recreational equipment or areas to individuals able to practice social distancing before, during or after the activity, or members of the same household. The owner or operator shall prepare a Safe Reopening Plan pursuant to section 11 which shall include a requirement that all equipment be sanitized with a disinfectant effective against coronavirus immediately after every use.

    iii.  One-on-one outdoor recreation instruction may occur provided the instructor and the student comply with social distancing and face covering requirements in this Order. If equipment is used, it shall not be shared between the instructor and the student, and should be appropriately sanitized, where appropriate.

ORDER OF THE HEALTH OFFICER AND EMERGENCY REGULATIONS

17. All essential businesses and reopened businesses that remain in operation in accordance with the Order shall make every effort to use telecommuting for their workforces.

18. A strong recommendation is made that all persons who are 65 years old or older, have a chronic underlying condition, or have a compromised immune system self-quarantine themselves at home or other suitable location.

19. All persons arriving in the county from international locations identified on the Centers for Disease Control and Prevention (CDC) Warning Level 2 or 3 Travel Advisory (available at: https://wwwnc.cdc.gov/travel/notices) shall be subject to 14-day home or other suitable location quarantine and self-monitoring.

20. Persons who have been diagnosed with COVID-19, or who are likely to have COVID-19, shall comply with the Order of the Health Officer titled: "Isolation of All Persons with or Likely to have COVID-19", or as subsequently amended. Persons who have a close contact with a person who either has COVID-19, or is likely to have COVID-19, shall comply with the Order of the Health Officer titled: "Quarantine of Persons Exposed to COVID-19," or as subsequently amended. Both orders are available at: https://www.sandiegocounty.gov/content/sdc/hhsa/programs/phs/community_epidemiology/dc/2019-nCoV/health-order.html. If a more specific isolation or quarantine order is issued to a person, that order shall be followed.

21. For purposes of this Order:
    a. "Essential business" is any business or activity (or a business/activity that employs/utilizes workers) designated by the State Public Health Officer as "Essential Critical Infrastructure Workers" set forth in: https://covid19.ca.gov/img/EssentialCriticalInfrastructureWorkers.pdf) as that list may be updated from time-to-time, and referenced in Executive Order N-33-20 issued by the Governor of the State of California. For the purposes of this Order, the following businesses in the Food and Agriculture Sector are considered "groceries" or "other retail that sells food and beverages": grocery stores, corner stores and convenience stores, liquor stores that sell food, farmer's markets, food banks, farm and produce stands, supermarkets, big box stores that sell groceries and essentials, or similar business that sell food so long as the store has a current permit related to the sale of food and/or beverages from the San Diego County Department of Environmental Health.
    b. "Gathering" is any event or convening that brings together more than one person in a single room or single indoor or outdoor space at the same time. A gathering does not

ORDER OF THE HEALTH OFFICER AND EMERGENCY REGULATIONS

include:

    i. A gathering consisting only of members of a single family or household.

    ii. Operations at airports, public transportation or other spaces where persons in transit are able to practice social distancing.

    iii. Operations at essential businesses as defined in section 21a above and reopened businesses as defined in 21f below and where the other requirements set forth in this Order are followed.

c. "Long term care facility" is a facility serving adults that require assistance with activities of daily living, including a skilled nursing facility, and that is licensed by the California Department of Community Care and Licensing, or the California Department of Public Health.

d. "Non-essential personnel" are employees, contractors, or members of the public who do not perform treatment, maintenance, support, or administrative tasks deemed essential to the healthcare mission of the long-term care facility or hospital. Non-essential personnel do not include first responders, nor State, federal, or local officials, investigators, or medical personnel carrying out lawful duties. Non-essential personnel do not include visitors to hospitals and long-term care facilities who are granted entry by the facility's director, or designee, because they are family or friends who are visiting a resident in an end of life or similar situation, are parents or guardians visiting a child who is a patient, or because of any other circumstances deemed appropriate by the facility director, or designee, and where appropriate precautions by the facility that follow federal, State, and local public health guidance regarding COVID-19 are followed.

e. "Social distancing" is maintaining a six-foot separation from all persons except for household members, first responders and medical providers or employees conducting temperature screenings.

f. "Reopened business" is a business that is not an essential business as stated in section 21a above, and has reopened in conformance with the State of California's Resilience Roadmap (available at: https://covid19.ca.gov/roadmap/), as may be subsequently amended, as indicated by the posting of a new State COVID-19 INDUSTRY GUIDANCE for the business. A reopened business may open when   the State has posted the applicable COVID-19 INDUSTRY GUIDANCE, the Public Health Officer has posted an acknowledgement of reopened status on the County of San Diego Coronavirus website and the business  has complied with the requirements of this Order.

ORDER OF THE HEALTH OFFICER AND EMERGENCY REGULATIONS

22. Hotels and lodging establishments – Effective June 2, 2020, all hotels and lodging establishments shall require employees at guest check in to verify compliance with the Order of the State Health Officer regarding operation of hotels and lodging establishments by mandating that guests sign and complete a Guest Certification for Hotels and Lodging Establishments, available at: https://www.sandiegocounty.gov/content/dam/sdc/hhsa/programs/phs/Epidemiology/covid19/HotelCertification.pdf. Hotels and lodging establishments shall maintain each guest certification for six months after the date of signature.

23. This Order is issued as a result of the World Health Organization's declaration of a worldwide pandemic of COVID-19 disease, also known as "novel coronavirus."

24. This Order is issued based on scientific evidence regarding the most effective approaches to slow the transmission of communicable diseases generally and COVID-19 specifically, as well as best practices as currently known and available to protect vulnerable members of the public from avoidable risk of serious illness or death resulting from exposure to COVID-19. The age, condition, and health of a significant portion of the population of the county places it at risk for serious health complications, including death, from COVID-19. Although most individuals who contract COVID-19 do not become seriously ill, persons with mild symptoms and asymptomatic persons with COVID-19 may place other vulnerable members of the public— such as older adults, and those with underlying health conditions—at significant risk.

25. The actions required by this Order are necessary to reduce the number of individuals who will be exposed to COVID-19, and will thereby slow the spread of COVID-19 in the county. By reducing the spread of COVID-19, this Order will help preserve critical and limited healthcare capacity in the county and will save lives.

26. This Order is issued in accordance with, and incorporates by reference: a) the Declaration of Local Health Emergency issued by the Health Officer on February 14, 2020; b) the Proclamation of Local Emergency issued by the County Director of Emergency Services on February 14, 2020; c) the action of the County Board of Supervisors to ratify and continue both the local health emergency and local emergency on February 19, 2020; d) the Proclamation of a State of Emergency issued by the Governor of the State of California on March 4, 2020; e) Executive Order N-25-20 issued by the Governor of the State of California on March 12, 2020 which orders that "All residents are to heed any orders and guidance of state and local health officials, including but not limited to the imposition of social distancing measures, to control COVID-19"; f) Proclamation 9984 regarding COVID-19 issued by the

ORDER OF THE HEALTH OFFICER AND EMERGENCY REGULATIONS

President of the United States on March 11, 2020; g) Executive Order N-33-20 issued by the Governor of the State of California on March 19, 2020; h) the "Interim Additional Guidance for Infection Prevention and Control for Patients with Suspected or Confirmed COVID-19 in Nursing Homes" issued by the CDC; i) COVID-19 guidance issued by the California Department of Public Health on including, but not limited to the Face Coverings Guidance issued on April 1, 2020; and j) the State of California's "Resilience Roadmap."

27. This Order is issued to prevent circumstances often present in gatherings that may exacerbate the spread of COVID-19, such as: 1) the increased likelihood that gatherings will attract people from a broad geographic area; 2) the prolonged time period in which large numbers of people are in close proximity; 3) the difficulty in tracing exposure when large numbers of people attend a single event or are at a single location; and 4) the inability to ensure that such persons follow adequate hygienic practices.

28. This Order is issued to provide additional opportunities for recreational activities while also requiring additional protections from the spread of COVID-19 to the public who are taking advantage of these opportunities for recreational activities.  And providing additional protections for employees of essential businesses or reopened business and their customers/clients by increasing facial covering requirements and health checks and temperature screening.

29. This Order is issued to protect the public health as businesses are allowed to reopen by requiring businesses to implement procedures necessary to ensure their employees and customers comply with social distancing, sanitation and screening practices.

30. This Order comes after the release of substantial guidance from the Health Officer, the California Department of Public Health, the CDC, and other public health officials throughout the United States and around the world.

31. Pursuant to Health and Safety Code section 120175.5 (b) all governmental entities in the county shall take necessary measures within the governmental entity's control to ensure compliance with this Order and to disseminate this Order to venues or locations within the entity's jurisdiction where gatherings may occur.

32. Violation of this Order is subject to fine, imprisonment, or both. (California Health and Safety Code section 120295.)

ORDER OF THE HEALTH OFFICER AND EMERGENCY REGULATIONS

33. To the extent necessary, this Order may be enforced by the Sheriff or chiefs of police pursuant to Government Code sections 26602 and 41601 and Health and Safety Code section 101029.

34. Once this Order takes effect it shall supersede the Order of the Health Officer and Emergency Regulations dated May 29, 2020.

**IT IS SO ORDERED:**

Date: June 3, 2020

Wilma J. Wooten, M.D., M.P.H.
Public Health Officer
County of San Diego

---

## EMERGENCY REGULATIONS

As Director of Emergency Services for the County of San Diego, I am authorized to promulgate regulations for the protection of life and property pursuant to Government Code Section 8634 and San Diego County Code section 31.103. The following shall be in effect for the duration of the Health Officer Order issued above which is incorporated in its entirety by reference:

The Health Officer Order shall be promulgated as a regulation for the protection of life and property.

Any person who violates or who refuses or willfully neglects to obey this regulation is subject to fine, imprisonment, or both. (Government Code section 8665.)

Date: June 3, 2020

Helen Robbins-Meyer
Chief Administrative Officer
Director of Emergency Services
County of San Diego