1   THOMAS E. MONTGOMERY, County Counsel (SBN 109654)
    County of San Diego
2   By Timothy M. White, Senior Deputy (SBN 220847)
    1600 Pacific Highway, Room 355
3   San Diego, California 92101-2469
    Telephone: (619) 531- 4865; Fax: (619) 531-6005
4   E-mail: timothy.white@sdcounty.ca.gov

5   Attorneys for Defendant,
    COUNTY OF SAN DIEGO

6

7

8               **IN THE UNITED STATES DISTRICT COURT**

9              **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10

11   ASHTON FORBES,                          )   No. 20-CV-00998-BAS-JLB
                                             )
12                    Plaintiff,             )   **MEMORANDUM OF POINTS AND**
                                             )   **AUTHORITIES IN SUPPORT OF**
13        v.                                 )   **DEFENDANT COUNTY OF SAN**
                                             )   **DIEGO'S MOTION TO DISMISS**
14   COUNTY OF SAN DIEGO,                    )   **PLAINTIFF'S SECOND AMENDED**
     GOVERNOR GAVIN NEWSOM in his            )   **COMPLAINT**
15   official capacity,                      )   **[Fed. R. Civ. P., Rule 12(b)(6)]**
     SONIA Y. ANGELL in her official         )
16   capacity, and                          )
     DOES 1-50,                              )
17                                           )   Judge:      Hon. Cynthia A. Bashant
                      Defendants.            )   Mag. Judge: Hon. Jill L. Burkhardt
18                                           )
                                             )   Hearing Date: Tuesday, Sept. 8, 2020
19                                           )
                                             )   **NO ORAL ARGUMENT UNLESS**
20                                           )   **REQUESTED BY THE COURT**
                                             )
21                                           )   Action Filed:    May 31, 2020
                                             )   Trial Date:      None Set
22   _____ )

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................ii

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ...................................1

II.    RELEVANT BACKGROUND – MATTERS SUBJECT TO JUDICIAL
       NOTICE..................................................................................................................1

       A.    The COVID-19 Global Pandemic and Public Health Emergency.............1

       B.    Mitigation Measures and Recommendations: Face Coverings.................3

             1.    World Health Organization ("WHO"). ............................................3

             2.    Centers for Disease Control and Prevention ("CDC"). ...................3

             3.    State of California. ...........................................................................5

             4.    County of San Diego.........................................................................6

III.   RELEVANT ALLEGATIONS IN THE SECOND AMENDED
       COMPLAINT ........................................................................................................7

IV.    DISMISSAL UNDER RULE 12(B)(6) – FAILURE TO STATE A CLAIM ...10

       A.    Legal Standard...........................................................................................10

       B.    Exercise of Executive Powers During State of Emergency ....................11

       C.    Plaintiff's Five Causes of Action Fail to State a Claim. ..........................14

             1.    Violation of California's Police Power...........................................14

             2.    Violation of Constitutional Right to Privacy .................................15

             3.    Violation of Constitutional Right to Move Freely.........................16

             4.    Violation of Constitutional Right to Personal Medical Decisions.17

             5.    Violation of Cal. Const., Art. I, § 1 Right to Liberty....................18

V.     CONCLUSION.....................................................................................................19

i

20cv00998

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................... 11, 16

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007) ..................................... 11

*Best Supplement Guide, LLC v. Newsom*, 2020 WL 2615022
(E.D. Cal. May 22, 2020) ........................................................................... 17, 19

*Cedars–Sanai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972
(9th Cir. 2007) ........................................................................................... 10-11

*Concerned Dog Owners of Cal. v. City of L.A.*, 194 Cal. App. 4th 1219,
123 Cal. Rptr. 3d 774 (2011) ...................................................................... 18

*Cross Culture Christian Ctr. v. Newsom, No. 2:20-cv-00832-JAM-CKD*, 2020 WL
2121111 (E.D. Cal. May 5, 2020) ........................................................... 11-12, 12

*Cruzan v. Dir., Mo. Dept. of Health*, 497 U.S. 261 (1990) ............................. 18

*Flynn v. Holder*, 684 F.3d 852 (9th Cir. 2012) .............................................. 14

*Galen v. County of Los Angeles*, 477 F.3d 652 (9th Cir. 2007) ...................... 14

*Giannini v. Real*, 911 F.2d 354 (9th Cir. 1990) .............................................. 17

*Gish v. Newsom, No. EDCV 20-755 JGB KKX*, 2020 WL 1979970
(C.D. Cal. Apr. 23, 2020) ....................................................................... 2, 11, 12

*In re Abbott*, 2020 WL 1685929 (5th Cir. Apr. 7, 2020) ................................. 12

*Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905) .............. 10

*Kim v. United States*, 121 F.3d 1269 (9th Cir. 1997) ................................. 14-15

*Lighthouse Fellowship Church v. Northam, No. 2:20CV204*, 2020 WL 2110416
(E.D. Va. May 1, 2020) ................................................................................. 2

*Miller v. Reed*, 176 F.3d 1202 (9th Cir. 1999) ............................................... 17

*Nat'l Org. for Reform of Marijuana Laws v. Gain*, 100 Cal. App. 3d 586,
161 Cal. Rptr. 181 (1979) ............................................................................ 19

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) ............................................ 10

*Novoa v. The GEO Group, Inc., Case No. EDCV 17-2514 JGB* (SHKx), 2020 WL
3031620 ................................................................................................... 3, 5

*Patel v. Penman*, 103 F.3d 868 (9th Cir. 1996) ............................................. 15

*Prince v. Massachusetts*, 321 U.S. 158 (1944) .............................................. 13

*Saenz v. Roe*, 526 U.S. 489 (1999) ............................................................... 17

*South Bay United Pentecostal Church v. Newsom*, 140 S.Ct. 1613 (May 29, 2020) ...... 13

ii

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) ................................... 11

*Stilwell v. Clark Cty.*, 2016 U.S. Dist. LEXIS 97421 (D. Nev. July 26, 2016) .............. 17

*United States v. Alexander*, 48 F.3d 1477 (9th Cir. 1995) ................................. 15

*Whitlow v. Cal. Dep't. of Education*, 203 F.Supp.3d 1079 (S.D. Cal. 2016) ................ 13

*Witt v. Dep't of Air Force*, 527 F.3d 806 (9th Cir. 2008) ................................. 15

*Zucht v. King*, 260 U.S. 174 (1922) ................................................ 13

**Statutes**

California Health & Safety Code

    Section 101040 ...........................................................................7, 14

    Section 120125 ...................................................................................5

    Section 120130 ...................................................................................5

    Section 120140 ...................................................................................5

    Section 120175 .............................................................................7, 9, 14

    Section 120175.5 ...............................................................................14

    Section 121080 ...................................................................................5

California Government Code

    Section 8558 ......................................................................................7

    Section 8567.......................................................................................5

    Section 8627.......................................................................................5

    Section 8665 ...............................................................................5, 6, 7

20cv00998

# I.

## INTRODUCTION AND SUMMARY OF ARGUMENT.

California, like the rest of this country (and much of the world), is in the middle of a once-in-a-lifetime pandemic: the widespread transmission of a novel coronavirus, SARS-CoV-2, and its resulting disease, COVID-19. Millions of individuals in this country have tested positive for COVID-19, with more than 135,000 dead since February. California, including the County of San Diego ("County"), continues to see high levels of new infections, hospitalizations, and deaths each week. There is no known cure, and a vaccine has not yet been developed. Nevertheless, a consensus among public health officials has emerged: in addition to physical (or "social") distancing, wearing facial coverings in public spaces is a critical public health measure to slow the spread of COVID-19. Accordingly, defendants have issued public health orders requiring that facial coverings be worn in specified "high-risk" situations.

Plaintiff Ashton Forbes concedes that these face-covering requirements are at least "minimally effective in stopping the spread of COVID-19,"[1] but he nonetheless argues that the science does not support defendants' mandates. The Second Amended Complaint ("SAC"), in essence, reflects Plaintiff's *policy disagreements* with defendants' public health decisions. But the SAC frames those policy disagreements as constitutional violations. Consequently, Plaintiff asks this Court to override the judgment of the public health officials and to strike down a key COVID-19 mitigation measure. With respect, this Court should decline to do so. And for the reasons set forth below, the SAC against the County should be dismissed.

# II.

## RELEVANT BACKGROUND – MATTERS SUBJECT TO JUDICIAL NOTICE.

### A.    The COVID-19 Global Pandemic and Public Health Emergency.

"On December 31, 2019, China reported incidents of a pneumonia of unknown cause to the World Health Organization.  Since then, that infectious disease, which came

---

[1] Second Amended Complaint, ECF 7, at p. 2:12-14.

1    to be known as coronavirus disease 2019 (COVID-19), has swept the globe, infecting

2    millions." [*Gish v. Newsom*, No. EDCV 20-755 JGB KKX, 2020 WL 1979970, at *2

3    (C.D. Cal. Apr. 23, 2020)[2].] In the United States, over 3.4 million people have been

4    infected with COVID-19, causing more than 135,000 deaths. [RJN, ¶ 2, Exh. 2, Centers

5    for Disease Control and Prevention ("CDC"), COVID-19 web page, at

6    https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited

7    7/15/20).]

8         In California, more than 340,000 people have tested positive for COVID-19,

9    resulting in over 7,200 deaths (as of July 15, 2020).[3] Recent trends remain troubling. Just

10   two days ago (July 14, 2020), the State reported 11,000 new COVID-19 cases and 140

11   more deaths. [RJN, ¶ 4, Exh. 3.] San Diego County has not been spared from the

12   pandemic. As of July 15, over 21,000 County residents have tested positive for COVID-

13   19, with 448 deaths. [RJN ¶ 5, Exh. 4.]

14         "There is currently no vaccine for the novel coronavirus, and it remains unlikely

15   that one will be developed in the coming months." [*Lighthouse Fellowship Church v.

16   Northam*, No. 2:20CV204, 2020 WL 2110416, at *1 (E.D. Va. May 1, 2020).]

17   "The CDC has announced that the novel coronavirus ('COVID-19') is spread primarily

18   through in-person interactions, either '[b]etween people who are in close contact with one

19   another' or '[t]hrough respiratory droplets produced when an infected person coughs,

20   sneezes or talks.'" [*Lighthouse Fellowship Church, supra*, 2020 WL 2110416, at *2.[4] "It

21   can be spread by people who are not showing symptoms and do not know they are

22   infected with the virus." [*Id.*; RJN ¶ 6, Exh. 5.]

23   / / /

24   _____

25   [2] Citing World Health Organization, Coronavirus Disease 2019 Situation Report,
     April 23, 2020 https://www.who.int/docs/default-source/coronaviruse/situation-
     reports/20200423-sitrep-94-covid-19.pdf?sfvrsn=b8304bf0_4, at Request for Judicial
26   Notice ("RJN"), ¶ 1, Exh. 1.
     [3] California Department of Public Health's COVID-19 web site, at
27   https://update.covid19.ca.gov (as of 7/15/20), at RJN, ¶ 3, Exh. 3.
     [4] Citing CDC, *How COVID-19 Spreads* (last updated June 16, 2020),
28   https://www.cdc.gov/corona-virus/2019-ncov/prevent-getting-sick/how-covid-
     spreads.html. [RJN ¶ 6, Exh. 5.]

20cv00998

**B.    Mitigation Measures and Recommendations: Face Coverings.**

Over the last few months, as more has become known about COVID-19 and how it spreads, public health experts have reached a consensus: the general public wearing face coverings in high-risk situations is a critical public health measure to slow or stem the transmission of the virus between people. The World Health Organization, the CDC, the State's and County's public health departments, and many other government agencies (including this Court[5]), now recommend or require that people wear face coverings whenever they are indoors with other members of the public, or when they are outdoors but in situations where it is not feasible to maintain physical distance from others.

1.    <u>World Health Organization ("WHO").</u>

The WHO recommends the use of face coverings in public when physical distancing with others cannot be maintained, as one component of a comprehensive set of public-health recommendations or requirements to help stem the spread of COVID-19. [RJN ¶ 8, Exh. 7, World Health Organization, *Q&A Masks and COVID-19*, June 7, 2020, subheading *Does WHO advise the use of non-medical, fabric masks in the general public?*, at https://www.who.int/emergencies/diseases/novel-coronavirus-2019/question-and-answers-hub/q-a-detail/q-a-on-covid-19-and-masks (last visited 7/15/20).] Additionally, the WHO now recommends that governments encourage the use of face coverings in public if there is widespread community transmission, and especially in settings where physical distancing cannot be maintained. [RJN ¶ 8, Exh. 7.]

2.    <u>Centers for Disease Control and Prevention ("CDC").</u>

In the United States, "CDC guidance on the use of masks and face coverings has changed over the course of the pandemic. [Starting in] early April 2020, the CDC recommended the use of cloth face coverings (as distinct from surgical or N95 masks) in 'public settings' where social distancing measures are 'difficult to maintain.'" [*Novoa v. The GEO Group, Inc.*, Case No. EDCV 17-2514 JGB (SHKx), 2020 WL 3031620, at *4,

---

[5] *See*, RJN ¶ 7, Exh. 6, Order of the Chief Judge No. 29 (S.D. Cal. June 10, 2020), at p. 4, ¶ 2, providing that: "Masks will be required for all participants, jurors, and spectators in the courtroom" during court proceedings.

3

and n. 3 (C.D. Cal. Apr. 22, 2020) (citing CDC, Use of Cloth Face Coverings to Help Slow the Spread of COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/diy-cloth-face-coverings.html).]

The CDC now *strongly* advises that the general public wear face coverings and maintain social distancing (staying at least six feet away from people outside one's own household), based on the risk of COVID-19 transmission from asymptomatic and pre-symptomatic individuals. For example, on the CDC's COVID-19 web site, under the heading "Consideration for Wearing Cloth Face Coverings – Help Slow the Spread of COVID-19," the CDC summarizes its current guidance as follows:

- "CDC recommends that people wear cloth face coverings in public settings and when around people who don't live in your household, especially when other social distancing measures are difficult to maintain.
- Cloth face coverings may help prevent people who have COVID-19 from spreading the virus to others.
- Cloth face coverings are most likely to reduce the spread of COVID-19 when they are widely used by people in public settings."

[RJN, ¶ 9, Exh. 8,  CDC, "Consideration for Wearing Cloth Face Coverings, Help Slow the Spread of COVID-19" at https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cloth-face-cover.html  (updated 6/28/20, last visited 7/7/20).]

The CDC not only advises the general public to wear face coverings in order to slow the spread of COVID-19, it backs up its guidance with a discussion of the "evidence for [the] effectiveness of cloth face coverings." Under the heading "Evidence for Effectiveness of Cloth Face Coverings," the CDC explains that:

"Cloth face coverings are recommended as a simple barrier to help prevent respiratory droplets from traveling into the air and onto other people when the person wearing the cloth face covering coughs, sneezes, talks, or raises their voice. This is called source control. This recommendation is based on what we know about the role respiratory droplets play in the spread of the virus that causes COVID-19, paired with emerging evidence from clinical and laboratory studies that shows cloth face coverings reduce the spray of droplets when worn over the nose and mouth. COVID-19 spreads mainly among people who are in close contact

4

with one another (within about 6 feet), so the use of cloth face coverings is particularly important in settings where people are close to each other or where social distancing is difficult to maintain."

[RJN, ¶ 9, Exh. 8, CDC, "*Consideration for Wearing Cloth Face Coverings, Help Slow the Spread of COVID-19*," at subheading "*Evidence for Effectiveness of Cloth Face Coverings*," at https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cloth-face-cover.html (updated 6/28/20, last visited 7/15/20).] The CDC identifies 19 published studies as evidence they relied on to develop their guidance for the general public's use of face coverings. [RJN, ¶ 9, Exh. 8, at subheading "*Recent Studies*" (updated 6/28/20, last visited 7/15/20).]

With respect to the *scope* of the CDC's face-covering guidance (i.e., who should wear them), the CDC's recommendations are quite similar to the State of California's current requirements (see below), which have been adopted by the County. [RJN, ¶ 9, Exh. 8, at subheading "*Who Should Wear a Cloth Face Covering?*" (updated 6/28/20, last visited 7/15/20).] Accordingly, the State's and the County's face-covering requirements (which are coextensive) are in line with the current scientific research and public-health guidance from both the WHO and the CDC.

3.   State of California.

In response to the COVID-19 pandemic, Governor Newsom issued Executive Order N-33-20 on March 19, 2020. [RJN, ¶ 10, Exh. 9.] The Governor's order required "all residents" of the State of California "to immediately heed the current State public health directives," including the State's March 19, 2020 Public Health Order that was incorporated into Executive Order N-33-20. [*Id.*] Pursuant to their authority under State law[6], including Executive Order N-33-20, on June 18, 2020 the "State Defendants" –

---

[6] The legal authority for the State Health Officer Order (contained in Governor Newsom's Executive Order N-33-20) is: California Health and Safety Code sections 120125, 120140, 131080, 120130(c), 120135, 120145, 120175 and 120150. And the legal authority for the Governor's Executive Order is Government Code sections 8567, 8627, and 8665. Further, as Governor Newsom noted therein, his Executive Order is enforceable pursuant to Government Code section 8665, following the proclamation of a state of emergency on March 4, 2020. [Executive Order N-33-20, RJN, ¶ 10, Exh. 9.]

5

20cv00998

Governor Gavin Newsom, and State Public Health Officer Dr. Sonia Angell – issued a public-health directive titled "Guidance for the Use of Face Coverings" (hereafter, "State Guidance"). [6/18/20 State Guidance, attached as Exhibit 2 to the SAC, at ECF 7-2.]

The State Guidance both (a) communicated the important benefits of wearing face coverings to reduce the transmission of COVID-19 between individuals (including those with no symptoms), and (b) imposed a statewide mandate that face coverings be worn in specified "high-risk" situations. [*Id.*] The State explained the reason for its policy change (moving from merely recommending that face coverings be worn, to imposing a statewide mandate) as follows:

> Over the last four months, we have learned a lot about COVID-19 transmission, most notably that people who are infected but are asymptomatic or pre-symptomatic play an important part in community spread. The use of face coverings by everyone can limit the release of infected droplets when talking, coughing, and/or sneezing, as well as reinforce physical distancing.

[State Guidance, ECF 7-2, at p. 2.]

The State Guidance requires non-exempt individuals in this State to "wear face coverings when they are in the high-risk situations" described by the mandate. [ECF 7-2, at pp. 2-4.] These "high-risk situations" include being in line to enter, or being inside of, "any indoor public space," obtaining healthcare services, public transportation, one's workplace if it's possible to come into contact with others, and while "outdoors in public spaces when maintain a physical distance of 6 feet from persons [outside one's household] is not feasible." [ECF 7-2, at pp. 2-3.] Expressly exempted from the State mandate are very young children, individuals "with a medical condition, mental health condition, [or] a disability that prevents wearing a face covering," people who are actively eating or drinking at a restaurant (when allowed), and others as specified. [ECF 7-2, at pp. 3-4.]

4.   <u>County of San Diego.</u>

When Plaintiff initiated this action, the State had not yet issued a mandate that face coverings be worn in public. But the County of San Diego had its own face-covering

20cv00998

requirement. [*See, e.g.*, County's Public Health Order (effective 6/4/20), attached to the SAC as Exhibit 1, at ECF 7-1, ¶ 9.] The order required all persons located within the County (other than very young children) to have in their possession a face covering whenever they left home, and to wear the face covering "whenever they are in a business or within six feet of another person who is not a member of their family or household." [*Id.*] "Persons with a medical or mental health condition, or developmental disability that prevents wearing a face covering" were exempt from the requirement. [*Id.*]

As soon as the State Defendants issued a *statewide* order that face coverings be worn in public spaces (as specified), the County amended its Public Health Order to expressly incorporate the State Guidance in place of the County's earlier standalone requirement. [*See* County Public Health Order, amended June 18, 2020 and effective June 19, 2020, at ECF 7-3, ¶ 9.] Accordingly, the State and the County now have identical face-covering mandates (including the exemptions). [*Compare* State Guidance, at ECF 7-2, *with* current (as of this writing) County Public Health Order, effective July 15, 2020, at ¶ 9, at RJN, ¶ 11, Exh. 10.]

The general statutory authority for the County's public health order is California Health and Safety Code sections 101040 and 120175. Section 101040 provides that the "local health officer" (such as County Public Health Officer Dr. Wilma Wooten) "may take any preventive measure that may be necessary to protect and preserve the public health from any public health hazard during a . . . 'local emergency' as defined by [Cal. Gov. Code § 8558]." With respect to COVID-19, the County declared a local health emergency on February 14, 2020. [RJN, ¶ 12, Exh. 11.] Section 120175 is similarly broad, permitting public health officers to "take measures as may be necessary to prevent the spread of the disease or occurrences of additional cases."

### III.

### RELEVANT ALLEGATIONS IN THE SECOND AMENDED COMPLAINT.

The SAC, filed on June 25, 2020, contains five causes of action challenging defendants' face-covering orders. [ECF 7, at ¶¶ 12-13, 40.] Plaintiff describes himself as

"a healthy individual" who resides in the County. [ECF 7, at ¶¶ 5, 14.] He concedes that defendants' face-covering requirements are at least "minimally effective in stopping the spread of COVID-19." [ECF 7, at p. 2:12-14.] He nevertheless argues that "the requirement to wear a face mask is overbroad and violates the fundamental rights of both the United States Constitution as well as the California Constitution." [ECF 7, at p. 2:15-17.]

Plaintiff asserts that face-covering requirements are "based on the belief that many SARS-CoV-2 transmissions may be from asymptomatic" individuals, and that "growing data shows that asymptomatic transmission of COVID-19 is not as prevalent as originally expected." [ECF 7, at ¶ 16.] He claims that the WHO "no longer recommends masks for any healthy individuals unless they are caring for positive COVID-19 patients." [ECF 7, at ¶ 18, and link to WHO website in fn. 5.] But if the reader clicks on the cited WHO webpage, the quoted language is not found (as of July 15, 2020). In fact, as discussed above (*see*, Section II(B)(1)), the WHO currently recommends the use of face coverings in public to help stem the spread of COVID-19.

Plaintiff asserts that there is "a common misconception" that coronavirus (SARS-CoV-2) "spreads by droplets," and that there "is little evidence to support this is the main method of transmission." [ECF 7, at ¶ 19.] In particular, he contends that the coronavirus is principally spread by "aerosol droplets" rather than "respiratory droplets." [ECF 7, at ¶¶ 19-20.] Plaintiff states that aerosol droplets are smaller than respiratory droplets, thus making face coverings less effective at filtering aerosol droplets than the larger respiratory droplets. [ECF 7, at ¶¶ 19-20.] But as support for this contention, Plaintiff cites an online news story with an off-topic quote from a scientist in the United Kingdom (speculating that 50% or less of the U.K. population may be susceptible to contracting COVID-19), as well as reports on two studies conducted months ago, in foreign countries (e.g., China), that do not appear to undercut – much less disprove – the efficacy of facial coverings in slowing the transmission of COVID-19. [ECF 7, at ¶¶ 21-23, and fns. 6-7.]

/ / /

Plaintiff quotes the County's Public Health Officer, Dr. Wooten, as saying on March 15, 2020, that the "thinking right now" is that if a person is "not actively displaying symptoms," he or she cannot transmit the virus to others. [ECF 7, at ¶ 23, and fn. 8.] But the very next day (March 16), Dr. Wooten clarified that there is uncertainty in the public health community regarding whether asymptomatic individuals can transmit the virus, and that "studies are going on where asymptomatic people are being tested to determine if that in fact is true, but we do not have the results of those research data at this time." [ECF 7, at ¶ 24.] Of course, *by the time that the State and the County issued the face-covering mandates being challenged in this case, the WHO and the CDC had recognized the value of face coverings to slow the transmission of COVID-19, and had issued recommendations or requirements that they be worn in public*.[7] [*See*, § II(B)(1)-(2), above.]

The SAC contains Plaintiff's hearsay statement that he "has been informed through his employment there are currently no asymptomatic positives after hundreds of surveillance tests." [ECF 7, at ¶ 26.] Plaintiff does not disclose where he works or what type of employment he has, what "surveillance tests" he is referring to, where or when the "surveillance tests" took place, or who "informed him" of this information. [*Id.*] Similarly, Plaintiff alleges that he "has also been informed that UCSD asymptomatic surveillance testing has a 1/4000 positive rate." [ECF 7, at ¶ 28.] But he does not allege who "informed him" of this information, what "UCSD asymptomatic surveillance testing" refers to, when, where, or on whom that "asymptomatic surveillance testing" was conducted, or what he contends is the significance of that testing. [*Id.*]

Under the heading "Effectiveness of Masks in Preventing the Spread of COVID-19," Plaintiff acknowledges that the CDC *recommends* wearing face coverings, but

---

[7] Plaintiff also alleges that in *February* 2020, the U.S. Surgeon General and the CDC each "tweeted" that face coverings were not recommended for the general public in response to coronavirus. [ECF 7, at ¶¶ 34-35.] Of course, much more is known about the virus and its transmission now than in February. As Plaintiff concedes, the CDC now recommends that the general public wear face coverings to help slow the spread of COVID-19. [ECF 7, at ¶ 33 and fn. 13; see also, § II(B)(2), above.]

20cv00998

1  asserts that the CDC does not "*federally require*" them. [ECF 7, at ¶ 33, and fn. 13

2  (italics added).] Tellingly, Plaintiff does not assert that the CDC, as opposed to State or

3  local governments exercising their general police powers, has the authority to impose a

4  face-covering requirement nationwide. Nor does he allege how the CDC recommending,

5  but not mandating, that face coverings be worn to combat the transmission of COVID-19,

6  supports his claim that defendants' orders that *do* require face coverings to be worn are

7  unconstitutional.

## IV.

## DISMISSAL UNDER RULE 12(b)(6) – FAILURE TO STATE A CLAIM.

10  Plaintiff's SAC asserts the following causes of action against both defendants: (1)

11  violation of California's police power; (2) violation of constitutional right to privacy; (3)

12  violation of constitutional right to move freely; (4) violation of constitutional right to

13  personal medical decisions; and (5) violation of the right to liberty under the California

14  Constitution. [ECF 7, at 1.]  Plaintiff prays for declaratory and injunctive relief. [ECF 7,

15  at 17.] The Court should grant the County's motion to dismiss the SAC under Rule

16  12(b)(6) for at least two reasons: (1) the challenged face-covering requirement, as a

17  temporary executive action taken in response to a public health emergency, is entitled to

18  substantial judicial deference, is not subject to traditional constitutional scrutiny, and

19  easily survives the limited judicial review permitted under *Jacobson v. Commonwealth of*

20  *Massachusetts*, 197 U.S. 11 (1905); and (2) Plaintiff's causes of action, brought under 42

21  U.S.C. § 1983 ("Section 1983") and state law, fail to state a claim upon which relief can

22  be granted. [FRCP 12(b)(6).]

23      **A.**    **Legal Standard.**

24  Under Rule 12(b)(6), a pleading must be dismissed if it fails to state a claim upon

25  which relief can be granted.  A motion to dismiss under Rule 12(b)(6) tests the legal

26  sufficiency of the complaint. [*Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001).] The

27  Court accepts all allegations of material fact as true and construes them in a light most

28  favorable to the nonmoving party. [*Cedars–Sanai Med. Ctr. v. Nat'l League of*

20cv00998

1  *Postmasters of U.S.,* 497 F.3d 972, 975 (9th Cir. 2007).] *But the Court does not need to*

2  *accept any legal conclusions as true.* [*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).]

3      Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his

4  'entitlement to relief' requires more than labels and conclusions, and a formulaic

5  recitation of the elements of a cause of action will not do." [*Bell Atlantic Corp. v.*

6  *Twombly,* 550 U.S. 554, 555 (2007) (internal citations omitted).] Instead, the allegations

7  in the complaint "must be enough to raise a right to relief above the speculative level."

8  [*Id.*] Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual

9  matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" [*Iqbal,*

10  *supra*, 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 570).]  Also, the court is not obliged

11  to "accept as true allegations that contradict matters properly subject to judicial notice or

12  by exhibit." [*Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)

13  (citation omitted), *amended on other grounds*, 275 F.3d 1187 (9th Cir. 2001).] Although

14  Rule 8 does not require detailed factual allegations, a plaintiff must allege "more than an

15  unadorned, the-defendant-unlawfully-harmed-me accusation."  [*Iqbal, supra*, 556 U.S. at

16  678.]

17  **B.    Exercise of Executive Powers During State of Emergency.**

18      When a State or local government enacts emergency measures to combat a serious

19  public health emergency, such temporary executive actions "are entitled to substantial

20  judicial deference and [are] not subject to traditional constitutional scrutiny." [*Gish*,

21  *supra*, 2020 WL 1979970 at *4.]  "Defendants have a right to protect California residents

22  from the spread of COVID-19—even if those protections temporarily burden

23  constitutional rights to a greater degree than normally permissible." [*Id.*]

24      "The Supreme Court held over a century ago that 'a community has the right to

25  protect itself against an epidemic of disease which threatens the safety of its members.'"

26  [*Ibid.,* at *4, quoting *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 27

27  (1905).]  To do so, a State may "exercise . . . its general police powers to promote public

28  safety during a public health crisis." [*Cross Culture Christian Ctr. v. Newsom*, No. 2:20-

11

20cv00998

cv-00832-JAM-CKD, 2020 WL 2121111 (E.D. Cal. May 5, 2020), at *3, citing *Jacobson*, *supra*, at 25.] And States' police powers – which they may invest in "counties and cities within their province" – "entails the authority 'to enact quarantine laws and health laws of every description.'" [*Id.*]

"Recognizing that the need to protect the public may trump individual rights during a crisis, the Supreme Court has held that states and municipalities have greater leeway to burden constitutionally protected rights during public emergencies:

> In every well-ordered society charged with the duty of conserving the safety of its members the rights of the individual in respect of his liberty may at times, under the pressure of great dangers, be subjected to such restraint, to be enforced by reasonable regulations, as the safety of the general public may demand.

[*Gish*, *supra*, 2020 WL 1979970 at *4-5, quoting *Jacobson*, 197 U.S. at 29.]

"When responding to the COVID-19 pandemic, therefore, Defendants 'may implement emergency measures that curtail constitutional rights so long as the measures have at least some "real or substantial relation" to the public health crisis and are not "beyond all question, a plain, palpable invasion of rights secured by the fundamental law."'" [*Gish*, at *5, quoting *In re Abbott*, 2020 WL 1685929, at *7 (5th Cir. Apr. 7, 2020) (quoting Jacobson, 197 U.S. at 31).] "In other words, during an emergency, traditional constitutional scrutiny does not apply.  Instead, any measures that limit or suspend constitutional rights (1) must have a 'real or substantial relation' to the crisis and (2) must not represent 'plain, palpable' invasions of clearly protected rights." [*Gish*, *supra*, at *5, quoting *Jacobson*, 197 U.S. at 31.] The challenged, temporary requirement that Plaintiff wear a face covering when he is in certain high-risk public spaces, easily meets the *Jacobson* test.

First, the challenged face-covering requirements (the State and County mandates are co-extensive) have a "real or substantial relation" to the public health crisis (the transmission of COVID-19 between persons). Plaintiff himself concedes that defendants' face-covering requirements are at least "minimally effective in stopping the spread of

20cv00998

1    COVID-19." [ECF 7, at p. 2:12-14.] And the WHO and CDC both recommend that

2    governments encourage or require the general public to wear face coverings to slow the

3    transmission of COVID-19. [RJN ¶ 8, Exh. 7 (WHO); RJN, ¶ 9, Exh. 8 (CDC).]

4         Second, the temporary face-covering requirements do not "represent 'plain,

5    palpable' invasions of clearly protected rights." [*Gish*, *supra*, at *5, quoting *Jacobson*,

6    197 U.S. at 31.]  Courts have long recognized that states and local governments have

7    broad authority under their general police powers to protect the public from infectious

8    diseases. "For more than 100 years, the United States Supreme Court has upheld the right

9    of the States to enact and enforce laws requiring citizens to be vaccinated." [*Whitlow v.*

10   *Cal. Dep't. of Education*, 203 F.Supp.3d 1079, 1083 (S.D. Cal. 2016), *citing Jacobson,*

11   *supra*; *Zucht v. King*, 260 U.S. 174 (1922).]

12        These public health measures have been upheld even against religious liberty

13   challenges under the First Amendment. [*Whitlow*, *supra* (upholding mandatory

14   vaccination of school-age children, despite parents' religious objections to the

15   vaccinations); *see also, Prince v. Massachusetts*, 321 U.S. 158, 166-67 (1944) ("The right

16   to practice religion freely does not include the liberty to expose the community or the

17   child to communicable disease or the latter to ill health or death").]  In fact, the United

18   States Supreme Court recently upheld the right of California and the County of San

19   Diego to limit indoor religious services in an effort to combat the spread of COVID-19.

20   [*South Bay United Pentecostal Church v. Newsom*, 140 S.Ct. 1613 (May 29, 2020).]

21        The challenged face-covering requirements are much less invasive than the

22   mandatory vaccinations upheld in *Jacobson, Zucht,* and *Whitlow,* and do not limit the

23   exercise of a constitutional right such as the restrictions on religious services upheld in

24   *South Bay*. *A fortiori*, defendants' temporary face-covering mandates, which require

25   Plaintiff to don a small piece of cloth or other material over his nose and mouth only

26   when he is in certain high-risk public spaces, in an effort to slow the spread of a once-in-

27   a-lifetime pandemic, should be upheld as a valid exercise of the County's (and the

28   State's) police powers. [*Gish*, *supra*, at *5, quoting *Jacobson*, 197 U.S. at 31.]

20cv00998

**C.     Plaintiff's Five Causes of Action Fail to State a Claim.**

Plaintiff's five causes of action fail to state a claim upon which relief can be granted, and should thus be dismissed. [FRCP 12(b)(6).]

1.     Violation of California's Police Power.

Plaintiff claims in his first cause of action that defendants' face-covering requirements exceed the permissible bounds of their police powers. Plaintiff acknowledges the source of the County's authority to enact the public health order, under California law. [ECF 7, at ¶ 44, citing Cal. Health & Safety Code §§ 101040, 120175, and 120175.5.] Further, Plaintiff recognizes that the County's police power is "broad and powerful," with "a large amount of discretion delegated to public health officials to protect the public health." [ECF 7, at ¶¶ 47-48.] Moreover, Plaintiff brings his first cause of action under Section 1983, and thus it cannot be based on a claim that the County's order violates any state law. [*See, Galen v. County of Los Angeles*, 477 F.3d 652, 662 (9th Cir. 2007).]

Instead, Plaintiff contends that the County's face-covering mandate violates the Fourteenth Amendment's substantive due process protections. [ECF 7, at ¶ 43.] He bases this claim on his disagreement regarding the efficacy of, or need for, a face-covering requirement to slow the transmission of COVID-19. [ECF 7, at ¶¶ 50-51.] Specifically, Plaintiff alleges that "based on the factual analysis [summarized in the SAC], the existing conditions do not warrant a facial covering to prevent the spread of COVID-19." [ECF 7, at ¶ 50; *see also*, ECF 7, at ¶ 51 (alleging that "the science does not support the argument that facial coverings are effective in preventing the spread of this contagious disease.").]

But at most, the allegations in Plaintiff's SAC (if assumed true) show that some scientists doubt whether facial coverings are effective in slowing the spread of COVID-19.  Such allegations are woefully insufficient to support Plaintiff's claim. The Court's review of the challenged health order is "highly deferential" to the public health officials. [*Flynn v. Holder*, 684 F.3d 852, 858 (9th Cir. 2012).] A "governmental action need only have a rational basis to be upheld against a substantive due process attack." [*Kim v.*

14

20cv00998

1  *United States*, 121 F.3d 1269, 1273 (9th Cir. 1997).] "If a statute is not arbitrary, but

2  implements a rational means of achieving a legitimate governmental end, it satisfies due

3  process." [*United States v. Alexander*, 48 F.3d 1477, 1491 (9th Cir. 1995).] To establish a

4  violation of substantive due process, "a plaintiff is ordinarily required to prove that a

5  challenged government action was 'clearly arbitrary and unreasonable, having no

6  substantial relation to the public health, safety, morals, or general welfare.'" [*Patel v.

7  Penman*, 103 F.3d 868, 874 (9th Cir. 1996), *quoting Euclid v. Ambler Realty Co.*, 272

8  U.S. 365, 395 (1926).] In the Ninth Circuit, courts "determine[ ] whether governmental

9  action is so arbitrary that a rational basis for the action cannot even be conceived *post

10  hoc.*" [*Witt v. Dep't of Air Force*, 527 F.3d 806, 817 (9th Cir. 2008).]

11       Certainly a rational basis *can be conceived* for the County's face-covering

12  requirement. The Country is in the middle of a pandemic, for which there is no cure or

13  vaccine. In California alone, more than 340,000 people have tested positive for COVID-

14  19, resulting in over 7,200 deaths (as of July 15, 2020). [8] And recent trends remain

15  troubling. Just yesterday (July 14, 2020), the State reported 11,000 new COVID-19 cases

16  and 140 more deaths. [RJN, ¶ 4, Exh. 3.] In San Diego County, over 21,000 residents

17  have tested positive for COVID-19, with 448 deaths (as of July 15, 2020). [RJN ¶ 5, Exh.

18  4] Both the WHO and the CDC have published recommendations that the general public

19  use face coverings to slow the transmission of COVID-19 between members of the

20  public, including asymptomatic individuals. [RJN ¶ 8, Exh. 7 (WHO); RJN, ¶ 9, Exh. 8

21  (CDC).] Thus, there is clearly a conceivable rational basis for the County's face-covering

22  mandate. Plaintiff's first cause of action should be dismissed.

23          2.   <u>Violation of Constitutional Right to Privacy.</u>

24       Plaintiff's second cause of action claims that defendants' face-covering

25  requirements violate Plaintiff's constitutional right to privacy. He alleges that the

26  challenged mandate "is sweeping and unnecessarily broad as it is not based on science or

27

28       [8] California Department of Public Health's COVID-19 web site, at
https://update.covid19.ca.gov (as of 7/15/20), at RJN, ¶ 3, Exh. 3.

20cv00998

data which shows that facial coverings are not effective in stopping the spread of COVID-19." [ECF 7, at ¶ 59.] Plaintiff does not allege how wearing a face covering in certain high-risk public spaces harms his privacy (masks often provide *more* privacy). In any event, Plaintiff's contention that "facial coverings are not effective in stopping the spread of COVID-19" is not supported by the allegations in Plaintiff's own complaint, which at most show that a few scientists have doubts about the efficacy of such public health measures. Further, Plaintiff himself concedes that the challenged face-covering requirements are at least "minimally effective in stopping the spread of COVID-19." [ECF 7, at p. 2:12-14.] And the Court can take judicial notice that the WHO and CDC each recommend that such face-covering requirements be used to slow the transmission of COVID-19. [RJN ¶ 8, Exh. 7 (WHO); RJN, ¶ 9, Exh. 8 (CDC).]

Plaintiff's second cause of action is pleaded in wholly conclusory terms, and at bottom appears identical to his substantive due process challenge in the first cause of action. A plaintiff must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." [*Iqbal, supra*, 556 U.S. at 678.] Plaintiff has not done so here; there are no factual allegations that would support a claim that the County has violated Plaintiff's constitutional right to privacy. The cause of action should be dismissed.

### 3.   Violation of Constitutional Right to Move Freely.

Plaintiff's third cause of action alleges a violation of his constitutional "right to 'travel' or move freely." [ECF 7, at ¶ 64.] Specifically, Plaintiff claims that:

> The requirement of Plaintiff to wear a facial covering in public when not in his residence restricts his right to travel within the County by forcing him to make a decision between wearing a facial covering which provides no medical benefit and in fact creates other collateral health risks, or remain a prisoner in his own home. Either choice violates essential constitutional rights of the Plaintiff.

[ECF 7, at ¶ 67.]

First, the County's Public Health Order does not require "Plaintiff to wear a facial covering in public when not in his residence." The Order (and the State Guidance that it incorporates) requires Plaintiff to possess a face covering when he leaves home, and then

16

20cv00998

1  to wear it when he is in certain specified "high-risk" situations, such as inside a business,

2  on public transportation, or when he is outdoors in public but cannot maintain at least six

3  feet of distance from persons who are not members of his household. [State Guidance, at

4  ECF 7-2; County's Public Health Order, effective 7/15/20, at ¶ 9, at RJN, ¶ 11, Exh. 10.]

5      Second, the requirement that he wear a face covering when he is in certain high-

6  risk public situations does not violate his right to travel. The Fourteenth Amendment's

7  right to travel, or move freely, "protects [1] the right of a citizen of one State to enter and

8  to leave another State, [2] the right to be treated as a welcome visitor rather than an

9  unfriendly alien when temporarily present in the second State, and, [3] for those travelers

10  who elect to become permanent residents, the right to be treated like other citizens of that

11  State." [*Saenz v. Roe*, 526 U.S. 489, 500 (1999).] "Discrimination on the basis of out-of-

12  state residency is a necessary element for a claim under the Privileges and Immunities

13  Clause." [*Giannini v. Real*, 911 F.2d 354, 357 (9th Cir. 1990).]

14      "[A]s *Saenz* demonstrates, the right to travel found in the Fourteenth

15  Amendment is concerned with preventing discrimination against out-of-state visitors and

16  new residents of a state." [*Stilwell v. Clark Cty.*, 2016 U.S. Dist. LEXIS 97421, at *31-33

17  (D. Nev. July 26, 2016).] Neither the Supreme Court nor the Ninth Circuit have

18  recognized a constitutional right to intrastate travel. [*Best Supplement Guide, LLC v.

19  Newsom*, 2020 WL 2615022, at *4–5 (E.D. Cal. May 22, 2020), citing *Nunez ex rel.

20  Nunez v. City of San Diego*, 114 F.3d 946, 949 n.7 (9th Cir. 1994).] And even when

21  interstate travel is involved, courts have found that minor burdens on such travel are not

22  constitutionally problematic. [*See, e.g., Miller v. Reed*, 176 F.3d 1202, 1205 (9th Cir.

23  1999) (recognizing that "minor burdens impacting interstate travel, such as toll roads, do

24  not constitute a violation of the right to travel").]

25      Plaintiff's third cause of action states no facts which, if accepted as true, would rise

26  to the level of violating his constitutional right to travel under *Saenz v. Roe*. The County's

27  face-covering requirement does not prevent Plaintiff from traveling outside the County or

28  the State. It only imposes a temporary requirement that when Plaintiff is in certain high-

20cv00998

1  risk public spaces *within the County*, that he wear a face covering to help stem the spread

2  of COVID-19. Plaintiff's third cause of action should be dismissed.

3          4.    <u>Violation of Constitutional Right to Personal Medical Decisions.</u>

4        Plaintiff's fourth cause of action alleges that defendants' face-covering

5  requirements violate his constitutional right to make personal medical decisions.

6  Specifically, Plaintiff alleges that the mandates violate his right, recognized by the

7  Supreme Court in *Cruzan*, "to decline unwanted medical treatment" if he so chooses.

8  [ECF 7, at ¶ 75, citing *Cruzan v. Dir., Mo. Dept. of Health*, 497 U.S. 261, 277 (1990)

9  (holding that "a competent person has a constitutionally protected liberty interest in

10  refusing unwanted medical treatment.").] Plaintiff's claim fails, because nothing in the

11  County's face-covering order forces Plaintiff to receive unwanted medical treatment. The

12  requirement that Plaintiff wear a face covering while in certain high-risk public spaces in

13  no way prevents Plaintiff from seeking or receiving wanted medical care, or requires

14  Plaintiff to undergo medical treatment that he would rather not receive. Plaintiff's fourth

15  cause of action should be dismissed.

16          5.    <u>Violation of Cal. Const., Art. I, § 1 Right to Liberty.</u>

17        Plaintiff's fifth cause of action alleges that defendants' face-covering requirements

18  have deprived Plaintiff of "his liberty to freely move about in public, as well as an

19  invasion of the privacy of his person by requiring him to wear a facial covering that does

20  not accomplish the state's goal of stopping the spread of COVID-19." [ECF 7, at ¶ 82.]

21  Plaintiff contends that the challenged mandates violate his right to liberty under Article I,

22  Section 1 of the California Constitution. [ECF 7, at ¶ 81.]

23       "Constitutional guarantees of life, liberty, and property [under the State

24  Constitution] do not vest absolute in the individual; they are necessarily circumscribed by

25  the requirements of public health and safety." [*Concerned Dog Owners of Cal. v. City of*

26  *L.A.*, 194 Cal. App. 4th 1219, 1238, 123 Cal. Rptr. 3d 774, 789 (2011) (internal citations

27  omitted).] When a state or local government exercises its police powers to enact

28  regulations for public health or safety, a plaintiff challenging the regulation as violating

20cv00998

his right to liberty under the California Constitution must show that the lawmakers acted *irrationally* in enacting the regulation. [*Nat'l Org. for Reform of Marijuana Laws v. Gain*, 100 Cal. App. 3d 586, 598, 161 Cal. Rptr. 181, 187 (1979) (upholding state law ban on the use and possession of marijuana against "right to liberty" challenge, as the appellants had "not shown irrational conduct by [the] lawmakers," who had the "basic power" to "enact reasonable police regulations").]

The challenged face-covering requirement is not irrational, but a reasonable exercise of the County's police powers to protect public health and safety in the middle of a pandemic. The WHO and the CDC each recommend that the general public wear face coverings to slow the transmission of COVID-19. [RJN ¶ 8, Exh. 7 (WHO); RJN, ¶ 9, Exh. 8 (CDC).]  Plaintiff has not alleged facts sufficient to state a claim under the California Constitution, and his fifth cause of action should therefore be dismissed. [*See, Best Supplement Guide, LLC*, *supra,* 2020 WL 2615022, at \*6–7 (rejecting plaintiff gym owner's "right to liberty" challenge to the State's COVID-19 stay-at-home order, brought under the California Constitution).]

**IV.**

**<u>CONCLUSION.</u>**

For the foregoing reasons, Defendant County of San Diego respectfully requests that this Court dismiss Plaintiff's Second Amended Complaint, and each cause of action therein, with prejudice.

DATED: July 16, 2020          THOMAS E. MONTGOMERY, County Counsel

By     s/Timothy M. White
TIMOTHY M. WHITE, Senior Deputy
Attorneys for Defendant,
COUNTY OF SAN DIEGO
E-mail: timothy.white@sdcounty.ca.gov

19

20cv00998