XAVIER BECERRA
Attorney General of California
PAUL STEIN
Supervising Deputy Attorney General
NATASHA SAGGAR SHETH
Deputy Attorney General
State Bar No. 282896
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 510-3818
 Fax:  (415) 703-5480
 E-mail:  Natasha.Sheth@doj.ca.gov
*Attorneys for Governor Gavin Newsom and*
*Sonia Y. Angell, in their official capacities*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ASHTON FORBES,** | 3:20-cv-00998-BAS-JLB |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| **v.** | |
| **COUNTY OF SAN DIEGO, GOVERNOR GAVIN NEWSOM in his official capacity, SONIA Y. ANGELL, in her official capacity, and DOES 1-50,** | Judge:        Hon. Cynthia A. Bashant<br>Courtoom:    4B |
| Defendants. | Hearing Date : Tuesday, Sept. 8, 2020 |

# TABLE OF CONTENTS

**Page**

Introduction...................................................................................................1

Background....................................................................................................2

    I.    California's Response to the Pandemic. ..............................2

    II.   The Statewide Mask Order. ..................................................4

    III.  The Allegations in the Complaint .........................................7

Legal Standard ..............................................................................................8

Argument ......................................................................................................8

    I.    Plaintiff Fails to State a Claim Under the Deferential *Jacobson* Framework. ........................................................................9

    II.   Plaintiff's Claims Also Fail Under Traditional Constitutional Analysis. ...........................................................11

        A.   Plaintiff Fails to State a Claim for "Violation of California's Police Power." ..........................................11

           1.   To the extent the first claim is based on alleged violations of state law, it is barred by the Eleventh Amendment. ...............................................12

           2.   To the extent the first claim alleges a due process violation, it fails as a matter of law. ...............13

        B.   Plaintiff's Right-to-Privacy Claim Fails...................15

        C.   Plaintiff's Right-to-Travel Claim Fails. ...................16

        D.   Plaintiff's "Right to Personal Medical Decisions" Claim Fails.....................................................................17

        E.   Plaintiff's Claim Under the California State Constitution is Barred By Eleventh Amendment Sovereign Immunity........18

Conclusion ...................................................................................................18

i

1

# TABLE OF AUTHORITIES

2

<u>**Page**</u>

3

CASES

4

*Bell Atlantic Corp. v. Twombly*

5
    550 U.S. 544 (2007) ........................................................................... 8

6

*Berman v. Parker*

7
    348 U.S. 26 (1954) ........................................................................... 12

8

*Best Supplement Guide, LLC v. Newsom, et al.*

9
    No. 2:20-cv-00965-JAM-CKD, 2020 WL 2615022 (E.D. Cal. May
    22, 2020) ........................................................................... 9, 13, 16, 18

10

*Carey v. Population Servs., Int'l*

11
    431 U.S. 678 (1977) ......................................................................... 15

12

*Coakley v. Murphy*

13
    884 F.2d 1218 (9th Cir. 1989) ........................................................... 8

14

*Cross Culture Christian Ctr. v. Newsom*

15
    __ F. Supp. 3d __, No. 2:20-cv-00832-JAM-CKD, 2020 WL

16
    2121111 (E.D. Cal. May 5, 2020) ................................................... 10

17

*Cruzan by Cruzan v. Dir., Missouri Dep't of Health*
    497 U.S. 261 (1990) ......................................................................... 17

18

*Edwards v. California*

19
    314 U.S. 160 (1941) ......................................................................... 16

20

*Ellwest Stereo Theatres, Inc. v. Wenner*

21
    681 F.2d 1243 (9th Cir. 1982) ......................................................... 15

22

*Erotic Serv. Provider Legal Educ. & Research Project v. Gascon*

23
    880 F.3d 450 (9th Cir.) .................................................................... 14

24

*George v. Diaz*

25
    No. 20-CV-03244-SI, 2020 WL 2542020 (N.D. Cal. May 19, 2020) ................. 4

26

*Gish v. Newsom*

27
    No. 5:20-cv-00755-JGB-KKX, 2020 WL 1979970 (C.D. Cal. Apr.
    23, 2020) ....................................................................................... 1, 10

28

ii

Memorandum of Points and Authorities In Support of State Defendants' Motion to Dismiss
Second Amended Complaint (3:20-cv-00998)

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Givens v. Newsom, et al.*
__ F. Supp. 3d __, No. 2:20-cv-00852-JAM-CKD, 2020 WL
2307224 (E.D. Cal. May 8, 2020) .................................................. 9

*Halverson v. Skagit Cty.*
42 F.3d 1257 (9th Cir. 1994) .......................................................... 13

*In re Cutera Securities Litig.*
610 F.3d 1103 (9th Cir. 2010) .......................................................... 8

*Jacobson v. Massachusetts*
197 U.S. 11 (1905) ........................................................ 2, 9, 10, 11

*Medtronic, Inc. v. Lohr*
518 U.S. 470 (1996) ...................................................................... 12

*Mendoza v. Garrett*
358 F. Supp. 3d 1145 (D. Or. 2018) ............................................... 16

*Nat'l Fed'n of Indep. Bus. v. Sebelius*
567 U.S. 519 (2012) ...................................................................... 12

*Nunez ex rel. Nunez v. City of San Diego*
114 F.3d 935 (9th Cir. 1994) .......................................................... 16

*Paris Adult Theatre I v. Slaton*
413 U.S. 49 (1973) ........................................................................ 15

*PCG-SP Venture I LLC v. Newsom, et al.*
No. 5:20-cv-01138-JGB-KK, ECF No. 22 (C.D. Cal. June 23,
2020) ...................................................................................... 10, 18

*Pennhurst State Sch. & Hosp. v. Halderman*
465 U.S. 89 (1984) ................................................................... 12, 18

*Phillips v. City of New York*
775 F.3d 538 (2d Cir. 2015) ........................................................... 14

*Pistor v. Garcia*
791 F.3d 1104 (9th Cir. 2015) .......................................................... 8

iii

1

2

# TABLE OF AUTHORITIES
## (continued)

<u>Page</u>

3

*Prof. Beauty Fed'n of Cal. v. Newsom*

4
No. 2:20-cv-04275-RGK-AS, 2020 WL 3056126 (C.D. Cal. June 8,
2020) ............................................................................................. 18

5

*Publius v. Boyer-Vine*

6
237 F. Supp. 3d 997 (E.D. Cal. 2017) ........................................... 14

7

*S. Bay United Pentecostal Church v. Newsom*

8
140 S. Ct. 1613 (2020) ............................................................. 1, 9, 11

9

*Safe Air for Everyone v. Meyer*

10
373 F.3d 1035 (9th Cir. 2004) ......................................................... 8

11

*Six, et al. v. Newsom, et al.*

12
__ F. Supp. 3d __, No. 820-cv-00877-JLS-DFM, 2020 WL
2896543 (C.D. Cal. May 22, 2020) ............................................. 9, 18

13

*Steckman v. Hart Brewing, Inc.*

14
143 F.3d 1293 (9th Cir. 1998) ......................................................... 8

15

*Stormans, Inc. v. Wiesman*

16
794 F.3d 1064 (9th Cir. 2015) ....................................................... 14

17

*Sweaney v. Ada Cty., Idaho*

18
119 F.3d 1385 (9th Cir. 1997) ....................................................... 13

19

*Torres v. Lynch*

20
136 S. Ct. 1619 (2016) .................................................................. 12

21

*U.S. v. Ritchie*

22
342 F.3d 903 (9th Cir. 2003) ........................................................... 8

23

*Vasquez v. Rackauckas*
734 F.3d 1025 (9th Cir. 2013) ................................................. 12, 18

24

25

*Washington v. Glucksberg*
521 U.S. 702 (1997) ...................................................................... 13

26

27

*Whitlow v. California*
203 F. Supp. 3d 1079 (S.D. Cal. 2016) (Sabraw, J.) ................. 14, 17

28

iv

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Wholesale Tobacco Dealers Bureau of S. California v. Nat'l Candy &
   Tobacco Co.*
   11 Cal. 2d 634 (1938) .......................................................................... 14

**CONSTITUTIONAL PROVISIONS**

California State Constitution
   Article 1, § 1 ........................................................................... 7, 17, 18

United States Constitution
   First Amendment ...................................................................... 14
   Eleventh Amendment ................................................... 12, 17, 18
   Fourteenth Amendment .............................................................. 15

**COURT RULES**

Federal Rules of Civil Procedure
   Rule 12(b)(1) ......................................................................... 8
   Rule 12(b)(6) ......................................................................... 8

**INTRODUCTION**

California, along with rest of the world, is combating a serious public health emergency of a magnitude unseen in the last century.  COVID-19 presently has no known cure or treatment, and continues to infect thousands of people in California with each passing day.  As of the date of this filing, California has recorded 391,538 confirmed cases and 7,694 deaths from the highly contagious and often fatal novel coronavirus disease.[1]

Early action by the State is credited with initially limiting the spread of disease and preventing numerous fatalities.  After months of sheltering in place, the State slowly started to reopen and resume economic activity.  But a troubling surge of new COVID-19 cases, including in San Diego County, threatens to reverse the State's initial success.  In an effort to avoid another shutdown, California Governor Gavin Newsom and State Public Health Officer Sonia Angell ("State Defendants") issued the June 18, 2020 Guidance for the Use of Face Coverings ("Mask Order"), requiring Californians to wear a face covering or mask when outside their home in certain specified high-risk settings.  *See* Second Amended Complaint ("SAC"), Ex. 2.

Plaintiff challenges the constitutionality of the Mask Order, alleging that it unnecessarily requires healthy individuals to wear face coverings.  SAC, p. 2:15-17.  Contrary to Plaintiff's allegations, it is widely understood—and cannot reasonably be disputed—that "healthy" individuals may be infected, but pre-symptomatic or asymptomatic, and unknowingly spread the disease to others.  *See, e.g., S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020) (Roberts, C.J., concurring) ("Because people may be infected but asymptomatic, they may unwittingly infect others."); *Gish v. Newsom*, No. 5:20-cv-00755-JGB-KKX, 2020

---

[1] *See* State Defendants' Request for Judicial Notice (RJN), Ex. 1. California Dept. of Public Health, *COVID-19 by the Numbers*, https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Immunization/ncov2019.aspx.

1   WL 1979970, at *4 (C.D. Cal. Apr. 23, 2020) (noting that "asymptomatic and pre-

2   symptomatic carriers of the virus can infect others . . . Anyone could be an

3   unknowing, undetectable vector for the virus at any time.").

4        Moreover, as multiple courts in this State have recently recognized, there is a

5   compelling public interest in protecting public health, and the State has broad

6   emergency powers to combat the pandemic.  It is settled law that "in every well-

7   ordered society … the rights of the individual in respect of his liberty may at times,

8   under the pressure of great dangers, be subjected to such restraint, to be enforced by

9   reasonable regulations, as the safety of the general public may demand." *Jacobson*

10  *v. Massachusetts*, 197 U.S. 11, 29 (1905).  And because public officials must take

11  swift and decisive action to deal with public health emergencies, judicial review of

12  such action is highly deferential.

13       While conceding that masks are at least "minimally effective in stopping the

14  spread of COVID-19" (SAC, p. 2:12-15), Plaintiff asks the Court to second-guess

15  and override the expert judgment of State public health officials, based on his own

16  view of the science.  His complaint should be dismissed without leave to amend.

17  As an initial matter, Plaintiff's complaint fails because the Mask Order simply does

18  not implicate his federal constitutional rights to privacy, to travel, or to decline

19  unwanted medical treatment.  Even if it did, the Mask Order would still be

20  constitutional as a matter of law, whether Plaintiff's claims are analyzed under the

21  framework that applies to emergency public health directives such as the Mask

22  Order, or under traditional constitutional standards.

## BACKGROUND

**I.   CALIFORNIA'S RESPONSE TO THE PANDEMIC.**

25       COVID-19, the novel coronavirus disease rapidly spreading across the globe,

26  is highly infectious and often deadly.  To date, the SARS-CoV-2 virus (the virus

27  responsible for COVID-19) has infected over 3.8 million Americans and killed

28

2

1    more than 140,000, with cases surging across much of the country.[2]  It is widely

2    understood (and, for purposes of this motion to dismiss, cannot reasonably be

3    disputed) that the disease can be transmitted by individuals who are asymptomatic

4    or pre-symptomatic, or who otherwise believe they are healthy.  *See, e.g.,* RJN, Exs.

5    5-7.

6         California responded early and decisively to the COVID-19 pandemic,

7    working to slow the virus's spread and preserve the health and safety of all

8    Californians.  On March 4, 2020, the Governor proclaimed a State of Emergency,

9    and on March 19, issued Executive Order N-33-20, directing all Californians to

10   immediately heed current State public health directives, which then required

11   residents to stay at home except for essential needs.[3]  Such swift and decisive action

12   is largely credited with limiting the spread of disease and preventing countless

13   fatalities.[4]

14        After months of sheltering in place, the State worked to ease public-health

15   restrictions imposed to combat COVID-19.  On May 8, California moved into

16   "Stage 2" of reopening, modifying the stay-at-home order, allowing certain lower-

17   risk workplaces to reopen with safety measures in place.[5]  However, a troubling

18   surge of new COVID-19 cases has recently led both local and State officials to take

19   additional steps to protect public health and safety from the threat posed by

20

21

22        [2] *See* RJN, Ex. 2, Centers for Disease Control and Prevention (CDC), *Cases*
23   *in U.S.*, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-
     us.html.
          [3] *See* Request for Judicial Notice in Support of Defendant County of San
24   Diego's Motion to Dismiss ("San Diego County's RJN"), ECF No. 11-2, Ex. 9.
          [4] Regan Morris, *Coronavirus: How California Kept Ahead of the Curve,*
25   BBC News (April 16, 2020), https://www.bbc.com/news/world-us-canada-
     52272651.
26        [5] *See* Office of Governor Gavin Newsom, *Governor Newsom Releases*
     *Updated Industry Guidance* (May 7, 2020),
27   https://www.gov.ca.gov/2020/05/07/governor-newsom-releases-updated-industry-
     guidance/; California's Resilience Roadmap, https://covid19.ca.gov/roadmap/.
28

COVID-19.  These steps have included orders requiring the use of masks or other face coverings, in addition to efforts to slow or roll back reopening.[6]

## II.   THE STATEWIDE MASK ORDER.

Since the inception of the crisis, a wide medical and scientific consensus has developed that masks are an important and effective means of combating the spread of the disease.  In the early stages of the pandemic, critical personal protective equipment—including N-95 masks—were in short supply for health care providers, and some health officials urged the public to stop buying masks, as they were needed for front-line responders, and their effectiveness in preventing the spread of disease for the general public was not yet apparent.  SAC, ¶ 34.[7]  However, by early April 2020 the Centers for Disease Control and Prevention ("CDC") began recommending that people wear cloth masks (sometimes called "face coverings" to avoid confusion with more specialized equipment like N-95 masks) when entering public spaces, in an effort to prevent the spread of infection by asymptomatic or pre-symptomatic people who have the virus and might not know it.[8]

Since then, numerous studies have been published supporting widespread use of face masks by both healthy-presenting and symptomatic individuals alike to limit the spread of disease.[9]  The CDC has called on Americans to wear masks to prevent

---

[6] *See, e.g.* RJN, Ex. 3, *See* July 13, 2020 Statewide Public Health Officer Order, https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/COVID-19/SHO%20Order%20Dimming%20Entire%20State%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.pdf.

[7] *See also* Maria Cramer and Knvul Sheikh, *Surgeon General Urges the Public to Stop Buying Face Masks,* N.Y. Times (Feb. 29, 2020), https://www.nytimes.com/2020/02/29/health/coronavirus-n95-face-masks.html.

[8] RJN, Ex. 4, Colin Dwyer and Allison Aubrey, *CDC Now Recommends Americans Consider Wearing Cloth Face Coverings in Public*, NPR News (Apr. 3, 2020), https://www.npr.org/sections/coronavirus-live-updates/2020/04/03/826219824/president-trump-says-cdc-now-recommends-americans-wear-cloth-masks-in-public; *see also George v. Diaz*, No. 20-CV-03244-SI, 2020 WL 2542020, at *2 (N.D. Cal. May 19, 2020) (taking notice that CDC first recommended the use of cloth face coverings in public settings on April 3, 2020).

[9] *See, e.g.*, RJN, Ex 5. , *New IHME COVID-19 Model Projects Nearly 180,000 US Deaths*, Institute for Health Metrics and Evaluation (June 24, 2020) [predicting prevention of over 2800 fatalities in California by October 1, 2020 if at

4

1  the spread of COVID-19, explaining that "[c]loth face coverings are one of the

2  most powerful weapons we have to slow and stop the spread of the virus –

3  particularly when used universally within a community setting."[10]  The World

4  Health Organization (WHO) also encourages the use of face coverings to combat

5  the spread of the disease when physical distancing is not possible.[11]  Beyond

6  protecting public health, recent analysis by economists at Goldman Sachs estimated

7  that a national mandate requiring the use of face masks would salvage roughly $1

8  trillion of economic activity by avoiding further shutdowns.[12]

9          On June 4, San Diego County issued an order generally requiring the use of

10  face coverings in public.  SAC at 3:19-25.  Two weeks later, on June 18, the

11  California Department of Public Health issued its "Guidance for the Use of Face

least 95% of people statewide wear masks in public];
        RJN, Ex. 6. Payne DC, Smith-Jeffcoat SE, Nowak G, et al., *SARS-CoV-2 Infections and Serologic Responses from a Sample of U.S. Navy Service Members — USS Theodore Roosevelt, April 2020*, CDC Morbidity and Mortality Weekly Report (June 12, 2020), https://www.cdc.gov/mmwr/volumes/69/wr/mm6923e4.htm#suggestedcitation [concluding that young, healthy adults with COVID-19 might have mild or no symptoms, therefore use of face coverings and other preventive measures could mitigate transmission];
        RJN, Ex. 7. M. Joshua Hendrix, MD, Charles Walde, MD, et al., *Absence of Apparent Transmission of SARS-CoV-2 from Two Stylists After Exposure at a Hair Salon with a Universal Face Covering Policy — Springfield, Missouri, May 2020*, , CDC Morbidity and Mortality Weekly Report (July 14, 2020), https://www.cdc.gov/mmwr/volumes/69/wr/mm6928e2.htm?s_cid=mm6928e2_w [concluding that broader implementation of face covering policies could mitigate the spread of infection in the general population];
        San Diego County's RJN, ECF No. 11-2, Ex. 7, CDC, *Considerations for Wearing Cloth Face Coverings*, *Recent Studies*  [citing 19 separate studies related to asymptomatic transmission and supporting use of face coverings in public settings].
        [10] RJN, Ex. 8, *CDC Calls on Americans to Wear Masks to Prevent COVID-19 Spread*, CDC Press Release (July 14, 2020), https://www.cdc.gov/media/releases/2020/p0714-americans-to-wear-masks.html.
        [11] *See* San Diego County's RJN, ECF No. 11-2, Ex. 7.
        [12] RJN, Ex. 10, Sarah Hansen, *A National Mask Mandate Could Save The U.S. Economy $1 Trillion, Goldman Sachs Says*, Forbes (June 30, 2020), https://www.forbes.com/sites/sarahhansen/2020/06/30/a-national-mask-mandate-could-save-the-us-economy-1-trillion-goldman-sachs-says/#7df9620c56f1 /; *see also* RJN, Ex. 9, *Face Masks and GDP*, Goldman Sachs Research (June 29, 2020), https://www.goldmansachs.com/insights/pages/face-masks-and-gdp.html [concluding that the national economy "could benefit significantly" from a national face mask mandate].

5

Coverings," requiring the use of face masks in certain high-risk public settings. SAC, Ex. 2. Specifically, the Mask Order requires the use of a face covering by individuals when:

- Inside of, or in line to enter, any indoor public space;
- Obtaining services from the healthcare sector . . .;
- Waiting for or riding on public transportation or paratransit or while in a taxi, private car service, or ride-sharing vehicle;
- Engaged in work, whether at the workplace or performing work off-site, when:
  - Interacting in-person with any member of the public;
  - Working in any space visited by members of the public, regardless of whether anyone from the public is present at the time;
  - Working in any space where food is prepared or packaged for sale or distribution to others;
  - Working in or walking through common areas, such as hallways, stairways, elevators, and parking facilities;
  - In any room or enclosed area where other people (except for members of the person's own household . . .) are present when unable to physically distance.
- Driving or operating any public transportation or paratransit vehicle, taxi, or private car service or ride-sharing vehicle when passengers are present. . . .;
- While outdoors in public spaces when maintaining a physical distance of six feet from persons who are not members of the same household . . . is not feasible.

*Id*. Certain individuals are exempted from these requirements, including children under two years of age, and persons with medical conditions that prevent the use of a mask. *Id*.

In explaining the newly issued public health order, Governor Newsom stated:

> Simply put, we are seeing too many people with faces uncovered – putting at risk the real progress we have made in fighting the disease. California's strategy to restart the economy and get people back to work will only be successful if people act safely and follow health recommendations. That means wearing a face covering, washing your hands and practicing physical distancing.

6

RJN, Ex. 11 (June 18, 2020 California Dept. of Public Health Press Release).

As cases continue to surge nationwide, other states have followed California's lead and instituted their own orders requiring the use of masks in public.[13]

## III.   THE ALLEGATIONS IN THE COMPLAINT

On May 31, 2020, Plaintiff filed an action against San Diego County health officials, challenging the county's requirement to wear face coverings in public. Complaint, ECF No. 1.  On June 25, 2020, Plaintiff filed a Second Amended Complaint to add the State Defendants following the issuance of the statewide Mask Order on June 18.  SAC, ECF No. 7.

Plaintiff alleges generally that masks are not effective at stopping the spread of the disease, and that the Mask Order is overbroad because it requires (apparently) healthy individuals to comply.  *E.g.*, SAC at 2:12-17 (alleging that "the requirement for healthy individuals to wear a facial covering is minimally effective in stopping the spread of COVID-19," and therefore violates "fundamental rights"); *id.* at ¶ 16 (alleging that "[m]andatory mask use is based on the belief that many . . . transmissions may be from symptomatic patients," but "growing data shows that asymptomatic transmission . . . is not as prevalent as originally expected"); *id.* at ¶ 19 (alleging there is a "common misperception" that the virus "spreads by droplets"); *id.* at ¶ 40 (alleging that "the science and data do not support the use of masks to stop the spread of COVID-19").

The SAC asserts five causes of action: (1) violation of "California's police power"; (2) violation of the right to privacy; (3) violation of the "right to move freely"; (4) violation of the "right to personal medical decisions"; and (5) violation of the right to liberty under article 1, section 1 of the California state constitution. Plaintiff seeks declaratory and injunctive relief, as well as costs and attorneys' fees.

---

[13] Bill Chappell, *More Than 20 U.S. States Now Require Face Masks In Public*, NPR News (July 10, 2020), https://www.npr.org/sections/coronavirus-live-updates/2020/07/10/889691823/more-than-20-u-s-states-now-require-face-masks-in-public.

7

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a complaint for lack of subject matter jurisdiction.  Sovereign immunity may also be raised in a Rule 12(b)(1) motion.  *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015).  A Rule 12(b)(1) motion may be "facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial attack, as here, the moving party asserts that the allegations, even if assumed true, are insufficient to confer jurisdiction.  *Id*.

Under Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed if it fails to state a claim upon which relief can be granted.  Although a complaint does not need "detailed factual allegations," it must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted).  A court should dismiss a complaint "if it fails to plead enough facts to state a claim to relief that is plausible on its face."  *In re Cutera Securities Litig.*, 610 F.3d 1103, 1107 (9th Cir. 2010) (citation omitted).

In considering a motion to dismiss, the Court may review documents incorporated by reference into the complaint, as well as documents that the court may judicially notice.  *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Where judicially noticeable documents or documents referenced in the complaint conflict with conclusory allegations in the complaint, the Court should ignore the conflicting allegations of the complaint.  *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295-96 (9th Cir. 1998).

If a complaint's defects are not curable, the court should dismiss without leave to amend.  *See Coakley v. Murphy*, 884 F.2d 1218, 1222 (9th Cir. 1989).

**ARGUMENT**

Plaintiff cannot state a plausible claim for relief in light of the current public-health crisis and the constitutional standard applicable to the State's exercise of

8

emergency powers to combat that crisis.  Moreover, even if Plaintiff's claims were subject to traditional constitutional analysis, they would still fail as a matter of law.

## I.  PLAINTIFF FAILS TO STATE A CLAIM UNDER THE DEFERENTIAL *JACOBSON* FRAMEWORK.

As set forth below (*see* Sections II(B)-(D), *infra*), the Mask Order does not interfere with the right to privacy, the right to travel, or other federal constitutional rights identified in the complaint.  In an extraordinary public-health crisis such as the COVID-19 pandemic, the State has broad emergency powers to protect public health, and courts should afford deference to temporary actions taken to curb the spread and mitigate its effects.  As the Supreme Court has long recognized, "a community has the right to protect itself against an epidemic of disease which threatens the safety of its members."  *Jacobson*, 197 U.S. at 27.

Under the *Jacobson* framework, the Mask Order should be upheld unless it has (1) "no real or substantial relation" to legitimate public health ends, or (2) is "beyond all question, a plain, palpable invasion" of constitutional rights.  *Id*. at 31. A long line of judicial rulings has already invoked this standard in rejecting challenges to other public health directives issued by the State during the pandemic. *See, e.g.*, *S. Bay United Pentecostal Church*, 140 S. Ct. at 1613 (Roberts, C.J. concurring) (relying on *Jacobson* in the context of the Supreme Court's denial of an application for emergency injunctive against state public health directives); *Best Supplement Guide, LLC v. Newsom, et al.,* No. 2:20-cv-00965-JAM-CKD, 2020 WL 2615022, at \*3-8 (E.D. Cal. May 22, 2020) (applying *Jacobson* to conclude that challenged state public health orders were a "constitutional response to an unprecedented pandemic"); *Givens v. Newsom*, *et al.,* __ F. Supp. 3d __, No. 2:20-cv-00852-JAM-CKD, 2020 WL 2307224, at \*3-5 (E.D. Cal. May 8, 2020) (applying *Jacobson* to conclude that the plaintiffs were unlikely to succeed on their challenge to restrictions on in-person protests), *appeal docketed*, No. 20-15949 (9th Cir. May 19, 2020); *Six, et al. v. Newsom, et al*., __ F. Supp. 3d __, No. 820-

9

cv-00877-JLS-DFM, 2020 WL 2896543 at *1-7 (C.D. Cal. May 22, 2020)
(concluding that a wide range of claims challenging public-health directives
"cannot survive under *Jacobson*'s governing standard"); *Cross Culture Christian
Ctr. v. Newsom*, __ F. Supp. 3d __, No. 2:20-cv-00832-JAM-CKD, 2020 WL
2121111, at *3-5 (E.D. Cal. May 5, 2020) (concluding that the State's stay-at-home
orders "bear a real and substantial relation to public health," and applying *Jacobson*
to uphold them on that basis), *appeal docketed*, No. 20-15977 (9th Cir. May 20,
2020); *Gish v. Newsom, et al.*, No. 5:20-cv-00755-JGB-KKX, 2020 WL 1979970,
at *4-5 (C.D. Cal. Apr. 23, 2020) (performing a similar analysis), *appeal docketed*,
No. 20-55445 (9th Cir. Apr. 28, 2020); RJN Ex. 12, *PCG-SP Venture I LLC v.
Newsom, et al.*, No. 5:20-cv-01138-JGB-KK, ECF No. 22 at 7 (C.D. Cal. June 23,
2020) (noting that, due to the continued spread of confirmed COVID-19 cases,
"[t]he reasons for applying *Jacobson's* relaxed constitutional scrutiny have become
more pressing since *Gish* and *South Bay*").

Under the *Jacobson* framework, Plaintiff's claims fail as a matter of law.  The
Mask Order clearly has a real and substantial relation to public health.  As noted
above, the State's Mask Order is consistent with a wide scientific and medical
consensus, including but not limited to recent guidance issued by the CDC and the
WHO.  In issuing the Mask Order, the State determined that

> *Over the last four months, we have learned a lot about how COVID-19
> transmission, most notably that people who are infected but
> asymptomatic or pre-symptomatic play an important part in community
> spread.  The use of face coverings by everyone can limit the release of
> infected droplets when talking coughing, and/or sneezing, as well as
> reinforce physical distancing.*

(SAC, Ex. 2, italics added.)

In debating the science behind mask-wearing requirements, and alleging that
(apparently) "healthy" individuals should not be required to wear them, Plaintiff is
essentially inviting this Court to second-guess the expert scientific and medical
judgment of State public health officials.  However, the Supreme Court has warned

10

against just this kind of second-guessing in the context of a public health emergency.  In *Jacobson*, it held that in a public health crisis "it is no part of the function of a court . . . to determine which one of two modes was likely to be the most effective for the protection of the public against disease."  197 U.S. at 30. And more recently, the Chief Justice observed that "[o]ur Constitution principally entrusts 'the safety and the health of the people' to the politically accountable officials of the States," and that such officials' public health judgments "should not be subject to second guessing" in court where—as here—they "act in areas fraught with medical and scientific uncertainties."  *S. Bay United Pentecostal Church*, 140 S. Ct. at 1613-14 (Roberts, C.J., concurring) (quoting, *inter alia*, *Jacobson*, 197 U.S. at 38).

Moreover, as shown more fully below (see Section II, *infra*), it is far from "plain" and "palpable" that the Mask Order violates constitutional rights: on the contrary, the Mask Order would pass muster even under the traditional constitutional analysis that applies outside the context of this public health emergency.  In light of the deference due to public health officials in the context of the COVID-19 pandemic under *Jacobson*, as well as the Mask Order's real and substantial relation to public health, the SAC should be dismissed without leave to amend.

## II. PLAINTIFF'S CLAIMS ALSO FAIL UNDER TRADITIONAL CONSTITUTIONAL ANALYSIS.

Even if Plaintiff's claims were analyzed under constitutional standards that normally apply outside the context of public health emergencies, Plaintiff's claims would still fail as a matter of law.

### A. Plaintiff Fails to State a Claim for "Violation of California's Police Power."

Plaintiff first purports to bring a cause of action for "violation of California's police power," premised on the notion that the Mask Order goes beyond what is "necessary" to prevent the spread of COVID-19.  SAC, ¶¶ 41-53.

11

As an initial matter, there is no federal cause of action for "violation of [a state's] police power." The police power is not a limit on the powers of state government; it is, instead, the "general power of governing" retained by the states under our Constitution's federal structure. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 536 (2012) (opinion of Roberts, C.J.). This power is "plenary," *Torres v. Lynch*, 136 S. Ct. 1619, 1625 (2016), within "specific constitutional limitations," *Berman v. Parker*, 348 U.S. 26, 32 (1954). It has long been understood to empower states "to protect the health and safety of their citizens," in particular. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996). In this light, it makes no sense to describe the Mask Order as a "violation of" of California's police power. The police power is not a limitation on state action; it is the State's power to act, which specifically includes the State's power to take action to protect public health.

Read generously, Plaintiff's first claim could perhaps be construed to invoke two specific potential limits on California's police power—but, so construed, would still fail for the reasons given below.

### 1. To the extent the first claim is based on alleged violations of state law, it is barred by the Eleventh Amendment.

Plaintiff's first claim could be construed to allege that the Mask Order violates state law. *See* SAC, ¶ 44 (citing the California Health and Safety Code), ¶ 46–47, 49–50 (citing California state-court cases). So construed, this claim is barred by sovereign immunity.

"A federal court's grant of relief against state officials on the basis of state law . . . conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Thus, "[a] federal court may not grant injunctive relief against state officials on the basis of state law." *Vasquez v. Rackauckas*, 734 F.3d 1025, 1041 (9th Cir. 2013) (citing *Pennhurst*, 465 U.S. at 106). To the extent Plaintiff's first

12

1   claim seeks to enjoin the Mask Order on the basis of state law, it is barred by

2   sovereign immunity.[14]

3          **2.     To the extent the first claim alleges a due process violation,
               it fails as a matter of law.**

4

5          Plaintiff's first claim could also be construed to allege that the Mask Order

6   violates due process.  *See* SAC, ¶ 43 (citing the Fourteenth Amendment Due

7   Process Clause).  So construed, the claim fails as a matter of law.

8          First, Plaintiff does not, and cannot, state a procedural due process claim.

9   "Governmental decisions which affect large areas and are not directed at one or a

10  few individuals do not give rise to the constitutional procedural due process

11  requirements of individual notice and hearing; general notice as provided by law is

12  sufficient."  *Halverson v. Skagit Cty.*, 42 F.3d 1257, 1261 (9th Cir. 1994).  Here, the

13  issuance of the Mask Order provided all the notice that was needed under the Due

14  Process Clause.  *See, e.g.*, *Best Supplement,* 2020 WL 2615022, at *5 (E.D. Cal.

15  May 22, 2020) (holding that prior statewide public health directives satisfied

16  procedural due process under *Halverson*).

17         Second, Plaintiff does not, and cannot, state a substantive due process claim.

18  "The [Supreme] Court's established method of substantive-due-process analysis has

19  two primary features: First, the Court has regularly observed that the Clause

20  specially protects [only] those fundamental rights and liberties which are,

21  objectively, deeply rooted in this Nation's history and tradition.  Second, the Court

22  has required a 'careful description' of the asserted fundamental liberty interest."

23  *Washington v. Glucksberg*, 521 U.S. 702, 703 (1997) (citations omitted).  Here,

24  Plaintiff fails to specifically describe the asserted fundamental liberty interest at

25  stake.  In any event, there is no fundamental liberty interest "deeply rooted in the

26  Nation's history and tradition" in being able to enter public settings without a face

27  _____

    [14] Further, as Plaintiff ostensibly brings this first cause of action under
28  42 U.S.C. § 1983 (SAC, ¶ 52), that section offers no redress for state law claims.
    *Sweaney v. Ada Cty., Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997)

13

mask, particularly during a global pandemic.  Indeed, even outside the emergency

context, courts have consistently rejected the notion that substantive due process

exempts members of the public from basic public health measures, such as

compulsory vaccination.  *See, e.g.*, *Whitlow v. California*, 203 F. Supp. 3d 1079,

1089 (S.D. Cal. 2016) (Sabraw, J.); *Phillips v. City of New York*, 775 F.3d 538,

542–43 (2d Cir. 2015); *Workman v. Mingo Cty. Bd. of Educ.*, 419. F. App'x 348,

356 (4th Cir. 2011) (unpublished).  If the government can require that members of

the public be vaccinated even in ordinary times, there is no question that members

of the public can be required to wear a mask in public in the midst of a pandemic.

　　"Laws that do not infringe a fundamental right survive substantive-due-

process scrutiny so long as they are 'rationally related to legitimate government

interests.'"[15] *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1085 (9th Cir. 2015)

(citing *Washington*, 521 U.S. at 728.)  "Rational basis review is highly deferential

to the government, allowing any conceivable rational basis to suffice." *Erotic Serv.*

*Provider Legal Educ. & Research Project v. Gascon*, 880 F.3d 450, 457 (9th Cir.),

amended, 881 F.3d 792 (9th Cir. 2018).  "In defending a statute on rational basis

review, the government has no obligation to produce evidence to sustain the

rationality of a statutory classification; rather, the burden is on the one attacking the

legislative arrangement to negate every conceivable basis which might support it."

*Ibid.* (internal quotations and citations omitted).  Plaintiff does not and cannot meet

this high burden.  The Mask Order, requiring the use of face coverings in certain

---

[15] Laws that do not implicate a fundamental liberty interest are not subject to strict scrutiny and need not be "narrowly tailored," as Plaintiff suggests.  SAC, ¶ 49.  Plaintiff's cited cases are not to the contrary.  *Wholesale Tobacco Dealers Bureau of S. California v. Nat'l Candy & Tobacco Co.*, 11 Cal. 2d 634, 82 P.2d 3 (1938) (SAC, ¶ 49) upheld the validity of California's Unfair Practices Act.  Finding that the statutory scheme was within the police power of the state, the court explained that its inquiry was limited to "determining whether the act is one reasonably connected with its avowed purpose." *Id.* at 646.  Indeed, the court explained that it was not the province of the courts to determine whether a rule is unwise so long as the measure is not arbitrary or discriminatory. *Id.* at 648. *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997 (E.D. Cal. 2017) (SAC, ¶ 49) is likewise inapposite, as it concerned a First Amendment challenge to a state statute.

14

high-risk public settings in an effort to protect public health and limit the spread of a highly contagious virus, easily withstands rational basis review.

For these reasons, Plaintiff's first claim should be dismissed without leave to amend.

## B.   Plaintiff's Right-to-Privacy Claim Fails.

Plaintiff's second claim alleges in conclusory fashion that the Mask Order violates his constitutional right to privacy.  *See* SAC ¶¶ 54-62.  This claim also fails.  The Mask Order requires only that individuals wear a face covering in certain high-risk *public* settings.  This fact, alone, is fatal to Plaintiff's right-to-privacy claim: the right to privacy does not follow an individual into public.  *See Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 66–67 (1973) ("The idea of a 'privacy' right and a place of public accommodation are, in this context, mutually exclusive."); *see also Ellwest Stereo Theatres, Inc. v. Wenner*, 681 F.2d 1243, 1247–48 (9th Cir. 1982).

Further, the constitutional right to privacy guaranteed by the Fourteenth Amendment includes "only personal rights that can be deemed fundamental or implicit in the concept of ordered liberty."  *Paris Adult Theatre I*, 413 U.S. at 65 (internal citations omitted).  This is limited to an individual's "interest in independence in making certain kinds of important decisions" related to "the most intimate of human activities and relationships," such as marriage, procreation, contraception, family relationships, and child rearing and education.  *Carey v. Population Servs., Int'l*, 431 U.S. 678, 684–85 (1977).  Plaintiff does not, and cannot, allege that he has a fundamental privacy interest in deciding for himself whether to wear a face covering in public amid a global pandemic: that is not the kind of fundamental liberty interest that courts have historically recognized as protected under the constitutional right to privacy.  For this additional reason, the claim fails.

15

## C.   Plaintiff's Right-to-Travel Claim Fails.

The third claim alleges broadly that the Mask Order violates his "freedom of movement."  *See* SAC ¶¶ 63-71.  The Mask Order does not violate Plaintiff's constitutional right to travel as a matter of law, and the claim therefore should be dismissed.

As an initial matter, the challenged order does *not* limit Plaintiff's freedom of movement.  Although Plaintiff alleges that it "restricts his right to travel within the County by forcing him to make a decision between wearing a facial covering . . . or remain a prisoner in his own home" (SAC, ¶ 67), the challenged order is not so restrictive.  On its face, the Mask Order merely requires the use of a mask in certain high-risk public settings.  Thus, for example, Plaintiff is free to travel in his car to any outdoor space where he can maintain a safe physical distance from others and not wear a mask, if he so chooses.

Even if the Mask Order were as restrictive as Plaintiff claims (and it is not), the third claim would still fail as a matter of law.  As noted, Plaintiff alleges only that the Mask Order "restricts his right to travel within the County," but "neither the Supreme Court nor the Ninth Circuit has recognized a constitutional right to *intrastate* travel."  *Mendoza v. Garrett*, 358 F. Supp. 3d 1145, 1173 (D. Or. 2018) (emphasis added); *see Nunez ex rel. Nunez v. City of San Diego*, 114 F.3d 935, 944 n.7 (9th Cir. 1994).

Finally, even if Plaintiff were to allege a violation of the federal right to *interstate* travel, the claim would still fail.  Since the earliest cases recognizing a right to travel, courts have also recognized that the right to interstate travel does not include a right to "endanger others by carrying contagion about," and is subject to reasonable regulation.  *Edwards v. California*, 314 U.S. 160, 184 (1941) (Jackson, J, concurring); *accord Best Supplement*, 2020 WL 2615022 at *5 (rejecting a right-

16

1   to-travel challenge to California's stay-at-home orders).  For this reason, too,

2   Plaintiff cannot state a right-to-travel claim.[16]

3       **D.   Plaintiff's "Right to Personal Medical Decisions" Claim Fails.**

4       Plaintiff's fourth claim, alleging a violation of his constitutional right to make

5   personal medical decisions (SAC, ¶¶ 72-79), is analytically similar to his privacy

6   claim, and fails for similar reasons.  First, the Mask Order does not require Plaintiff

7   to make a medical decision (*id.*, ¶ 76) or require him to accept medical "treatment"

8   against his wishes (*id.*, ¶ 75).  It does not require consultation with a medical

9   professional, nor does it require any medical treatment or care.

10      Second, even if the Mask Order implicated Plaintiff's right to decline

11  unwanted medical treatment (and it does not), the Order would still be

12  constitutional as a matter of law.  The use of a mask is temporary, is only required

13  in certain public settings, and does not affect Plaintiff's (or anyone's) bodily

14  integrity.  Thus, any intrusion is minimal and greatly outweighed by the State's

15  competing interest in limiting the spread of COVID-19.  *See Cruzan by Cruzan v.*

16  *Dir., Missouri Dep't of Health,* 497 U.S. 261, 279 (1990) (holding that "whether

17  respondent's constitutional rights have been violated must be determined by

18  balancing his liberty interests against the relevant state interests").  Indeed, as noted

19  above (*see supra*, Section II(A)(2)), courts have—for over a century—routinely

20  upheld mandatory vaccination requirements in light of the State's compelling

21  interest in fighting the spread of contagious diseases.  *See Whitlow*, 203 F. Supp. 3d

22  at 1089–90 (collecting cases).  The intrusion at issue here is relatively minor and

23  does not, as a matter of law, violate Plaintiff's rights.

24

25

26

27  ———————————

    [16] To the extent Plaintiff is asserting a claim under the California Constitution (see SAC, ¶ 65) that claim is barred by Eleventh Amendment immunity, as

28  discussed in Sections II(A)(1), II(E).

    17

### E.    Plaintiff's Claim Under the California State Constitution is Barred By Eleventh Amendment Sovereign Immunity

Plaintiff's fifth cause of action for violation of article 1, section 1 of the California state constitution (SAC, ¶¶ 80-85) is barred by the Eleventh Amendment. As explained above in the context of Plaintiff's first cause of action (*see supra*, Section II(A)(1)), "[a] federal court may not grant injunctive relief against state officials on the basis of state law." *Vasquez*, 734 F.3d at 1041; *see Pennhurst*, 465 U.S. at 106.  Federal courts considering state-law challenges to California's public health directives have consistently held that plaintiffs cannot rely on state law to obtain relief in federal court.  *See, e.g.*, *Best Supplement,* 2020 WL 2615022, at *7 ("Plaintiffs can neither succeed nor proceed on [their state law claim] against the State."); *Six*, 2020 WL 2896543, at *8 ("Under *Pennhurst* [], [plaintiffs' state law claims] are barred by the Eleventh Amendment."); *Prof. Beauty Fed'n of Cal. v. Newsom*, No. 2:20-cv-04275-RGK-AS, 2020 WL 3056126 at *8 (C.D. Cal. June 8, 2020) (same); RJN, Ex. 12, *PCG-SP Venture I LLC*, No. 5:20-cv-01138-JGB-KK, ECF No. 22 at 15 (C.D. Cal. June 23, 2020) (holding that "federal courts are prohibited by the Eleventh Amendment from relying on state law to enjoin state officials").

Accordingly, the Court should dismiss Plaintiff's fifth claim without leave to amend.

### CONCLUSION

For the foregoing reasons, the Court should dismiss the complaint without leave to amend.

1    Dated:  July 21, 2020                    Respectfully Submitted,

2                                             XAVIER BECERRA
                                              Attorney General of California
3                                             PAUL STEIN
                                              Supervising Deputy Attorney General
4

5

6                                             /s/ Natasha Saggar Sheth

7                                             NATASHA SAGGAR SHETH
                                              Deputy Attorney General
8                                             Attorneys for Governor Gavin
                                              Newsom and Sonia Y. Angell, in
9                                             their official capacities

10   SA2020302047
     42276804.docx
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        19