1  Philip Mauriello Jr., Esq. (SBN 321227)
2  Arete Law A.P.C.
   864 Grand Ave, #1050
3  San Diego, CA 92109
   Telephone: (619) 693-6474
4  Fax: (619) 693-6474
5  Email: phil@arete.law

6
7  Attorney for Plaintiff
   ASHTON FORBES
8
9              IN THE UNITED STATES DISTRICT COURT
10
11         FOR THE SOUTHERN DISTRICT OF CALIFORNIA
12
13  ASHTON FORBES,                    Case No. 3:20-cv-00998-BAS-JLB
14
            Plaintiff,               **MEMORANDUM OF POINTS AND**
15                                    **AUTHORITIES IN SUPPORT OF**
                                      **PLAINTIFF OPPOSITION TO**
16      vs                           **DEFENDANT COUNTY OF SAN**
                                      **DIEGO'S MOTION TO DISMISS**
17  COUNTY OF SAN DIEGO,
18  GOVERNOR GAVIN NEWSOM in his
    official capacity, SONIA Y. ANGELL in  Judge: Hon. Cynthia A. Bashant
19  her official capacity, DOES 1-50,      Mag. Judge: Hon. Jill L. Burkhardt
20
            Defendants.               Hearing Date: Tuesday, Sept. 8, 2020
21
22                                    **NO ORAL ARGUMENT UNLESS**
                                      **REQUESTED BY THE COURT**
23
24                                    Action Filed: May 31, 2020
25                                    Trial Date: N/A
26
27
28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF OPPOSITION TO
DEFENDANT COUNTY OF SAN DIEGO'S MOTION TO DISMISS

3:20-cv-00998

**Table of Contents**

I. INTRODUCTION AND SUMMARY OF ARGUMENT...................................1

II. RELEVANT BACKGROUND...................................................2

A. Mask Mandates ........................................................2

B. Public Health Emergency – "Once in a lifetime pandemic"................3

C. Mask Effectiveness....................................................5

D. California "Data Glitch" .............................................6

III. LEGAL STANDARD......................................................7

IV. ARGUMENT............................................................8

A. *Jacobson* and State Emergency Powers.................................8

B. Plaintiffs Causes of Action Properly State a Claim ..................12

1. Violation of California's Police Power..............................12

2. Violation of the Right to Privacy & Personal Medical Decisions.....13

3. Violation of Constitutional Right to Move Freely...................14

4. Violation of Cal. Const. Art. I, § 1 Right to Liberty..............15

C. Courts Are Able to Restrain Officials When Orders Are Arbitrary and Capricious ...........................................................15

CONCLUSION ...........................................................18

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF OPPOSITION TO DEFENDANT COUNTY OF SAN DIEGO'S MOTION TO DISMISS - i

3:20-cv-00998

# Table of Authorities

**Statutes**

Fed. R. Civ. P. 8(a)............................................................................7

Rule 12(b)(6)....................................................................................7

**Cases**

*Armstrong v. Exceptional Child Center, Inc.* 575 U.S. 320, 327 (2015)................17

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)...............................................7

*Bacich v. Board of Control of California*, 23 Cal. 2d 343, 358 (1943)...................12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)..................................7

*Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).............................7

*DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) ..................8

*Jacobson v. Commonwealth of Massachusetts* 197 U.S. 11 (1905)..........................8

*Jew Ho v. Williamson*, 103 F. 10, 19 (1900) .........................................13

*Kolender v. Lawson* 461 U.S. 352, 358 (1983) ......................................14

*Pacific Emp. Ins. Co. v. Industrial Commission* 219 Cal.App.2d 634, 640 (1963) 12

*Papachristou v. City of Jacksonville*, 405 U.S. 156, 164 (1972)..........................15

*Shelton v. Tucker* 364 U.S. 479, 488 (1960)............................................17

*Skalko v. City of Sunnyvale*, 14 Cal.2d 213, 216 (1939) ............................13

*Strother v. Southern California Permanente Medical Group* 79 F.3d 859, 865 (1996)................................................................................12

*Thor v. Superior Court*, 5 Cal.4th 725, 736 (1993); *quoting Natanson v. Kline*, 186 Kan. 393, 406–407 (1960)........................................................14

*Tobe v. City of Santa Ana*,  9 Cal.4th 1069, 1100 (1995)........................................14

*Union Pac. R. Co. v. Botsford* 141 U.S. 250 (1891)...............................14

*Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).........8

*Wholesale Tobacco Dealers Bureau of Southern California v. National Candy & Tobacco Co.*, 11 Cal.2d 634, 637 (1938) ...........................................13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF OPPOSITION TO
DEFENDANT COUNTY OF SAN DIEGO'S MOTION TO DISMISS - ii

3:20-cv-00998

1

# I. INTRODUCTION AND SUMMARY OF ARGUMENT

2

"We are going to do the right thing, not judge by politics, not judge by protests, but

3

by science."[1] – Governor Gavin Newsom

4

5

Contrary to Defendant Governor Newsom's statement, Plaintiff brings forth

6

this lawsuit to argue that Defendants have not been guided by science or data when

7

requiring the mandatory wearing of facial coverings and as such exceeded their

8

statutory emergency authority. Since the statewide mask mandate was issued by

9

Defendants Newsom and Angell, cases, deaths, and hospitalizations rose

10

tremendously showing no correlation that masks indeed have helped.

11

Science is not determined by consensus, politics are. Defendants have

12

argued that pseudoscience, supported by editorials, mechanistic studies, and

13

models are sufficient to provide 'rational cause,' despite them being countered by

14

many Randomized Clinical Trials (RCTs), the gold standard of scientific study.

15

Defendants have not only ignored the emerging science and data that shows

16

the worst of this pandemic is behind us, but worse, they seek to place the blame for

17

their failed lockdowns on the critics of their politics. They do this while making the

18

data supporting their sweeping actions completely unavailable to audit.[2]

19

Instead of admitting policy failure Defendants and improving on emerging

20

science and data to find better ways forward, they have doubled down and made

21

mandatory masks the centerpiece of their marketing. This way when reopening

22

doesn't cause the end of civilization they can claim victory that a cloth face mask

23

was one of the main reasons for stopping the spread of COVID-19.

24

Plaintiff does not wish to ban masks or the use of them altogether for those

25

who wish to voluntarily wear them for protection. Nor does he seek to prevent

26

27

[1] Patrick McGreevy, Newsom tells protesters of stay-at-order he will be swayed by science, not politics, Los Angeles Times (August 18, 2020), https://www.latimes.com/california/story/2020-04-18/newsom-tells-protesters-of-stay-at-home-order-he-will-be-swayed-by-science-not-politics.

28

[2] Scott Lewis and Jesse Marx, We're Suing for COVID-19 Data, Voice of San Diego (August 14, 2020) https://www.voiceofsandiego.org/topics/news/were-suing-for-covid-19-data.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF OPPOSITION TO
DEFENDANT COUNTY OF SAN DIEGO'S MOTION TO DISMISS - 1

3:20-cv-00998

Defendants from strongly recommending them. Instead, Plaintiff brings this lawsuit to challenge the extent to which public health officials can unilaterally act with no oversight in the face of mounting contradictory science and data. All while threatening noncompliance with deprivation of liberty and property through fines and imprisonment.

Since Defendant Governor Newsom declared a state of emergency, he has issued over 40 Executive Orders and unilaterally changed around 400 laws.[3] What was once a constitutional republican form of representative government in California has turned into an autocracy devoid of checks and balances. When data and science continue to show no rational or reasonable relation to a public health order's intended purpose, courts must step in to place check on their power.

Defendants have redefined "temporary emergency" to not be based on deaths or even hospitalizations to "flatten the curve", but instead on "cases" which are driven by state funded surveillance and tracing tests. Public health laws allow for public health officials to act swiftly to protect their constituents, not to provide for perpetual autocratic governance. This has led to a paradox where there is no possible end to the "temporary emergency" because of its own creation.

While it is imperative public officials work to protect the citizens of California, it is also imperative we not allow the abdication of checks and balances in the face of this, or any future health crisis.

## II. RELEVANT BACKGROUND

### A. Mask Mandates

Defendant San Diego County implemented a mandatory mask mandate through issuance of a Public Health Order ("Order") dated June 4th, 2020.[4] This

---

[3] Office of California Assemblyman Kevin Kiley, Overview of Governor Gain Newsom's Executive Action since March 4, 2020, https://blog.electkevinkiley.com/wp-content/uploads/2020/07/COVID-19-Executive-Orders-updated-06302020-1-1.pdf (last visited August 19, 2020.) (123 page document detailing all executive orders issued by Defendant Governor Newsom since declaring a state of emergency on March 4, 2020.)
[4] RJN Exhibit A, San Diego County Public Health Order dated June 4, 2020 at §9.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF OPPOSITION TO DEFENDANT COUNTY OF SAN DIEGO'S MOTION TO DISMISS - 2

3:20-cv-00998

order required the wearing of masks for individuals when out in public, in a business, or when they cannot socially distance from another individual.[5] Failure to follow the Order could result in punishment of either a fine, imprisonment, or both.[6]

Soon thereafter, Defendant Governor Newsom issued guidance ("Guidance") through Defendant Dr. Sonia Angell's Department of Public Health requiring all citizens of California to wear a mask in public when social distancing is not possible.[7]

Immediately after the issuance of this guidance, Defendant San Diego County updated their Order to incorporate the Guidance of the State of California.[8]

**B. Public Health Emergency – "Once in a lifetime pandemic"**

Defendant San Diego County characterizes the novel coronavirus, a cold virus, SARS-CoV-2, with an estimated 99.6% survival rate, as "causing more than 135,000 deaths." ECF 11-1 at 6:3-4. Defendants Newsom and Angell characterize the novel coronavirus as "often deadly." ECF 12-1 at 8-25-27. At the time of writing this motion, California had recorded 632,667 positive coronavirus cases with a total of 11,342 deaths.[9] Currently, the case fatality rate for California is 28 per 100,000.[10] In San Diego County, 34,960 people have tested positive for COVID-19, while 626 people have died from COVID-19.  This places the case fatality rate for San Diego County and the State of California at around 1.8%.

---

[5] *Id.*
[6] *Id.* at ¶ 32.
[7] RJN Exhibit B, California Department of Public Health, Guidance for Face Coverings at https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/COVID-19/Guidance-for-Face-Coverings_06-18-2020.pdf (last visited August 15, 2020).
[8] RJN Exhibit C, San Diego County Public Health Order dated June 19, 2020 at §9.
[9] RJN Exhibit D, California Coronavirus COVID-19 Statewide Update at https://update.covid19.ca.gov/ (last visited August 15, 2020).
[10] RJN Exhibit E, Statista, https://www.statista.com/statistics/1109011/coronavirus-covid19-death-rates-us-by-state/ (last visited August 15, 2020).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF OPPOSITION TO
DEFENDANT COUNTY OF SAN DIEGO'S MOTION TO DISMISS - 3

3:20-cv-00998

One such rationale for the requirement of masks is the belief that transmission occurs amongst those who are asymptomatic. A recent study showed the secondary attack rate increased with the severity of index cases, from 0.3% (CI, 0.0 to 1.0%) asymptomatic cases were least likely to infect their close contacts.[11] This supports the view of the World Health Organization that asymptomatic cases were not the major drivers of the overall epidemic dynamics.[12] If people spread the disease during the symptomatic phase then what is required to slow the spread is to isolate individuals who are showing symptoms and increase social distancing measures.

This U.S. COVID-19 epidemic is not uncommon. The U.S. 2017-2018 flu season is listed as an epidemic and the CDC's website states it has having estimated 48.8 million infections, nearly a million hospitalizations, and 79,400 deaths.[13] Thus placing the case fatality rate for influenza at 1.6% during the 2017-2018 flu season. There was no cloth face covering mandate or lockdown during this epidemic.

Further, whether the data on COVID-19 deaths is accurate also comes into question. "COVID deaths" nationally have been fraught with errors and miscalculations of those who died "of coronavirus" versus those who died "with coronavirus" which is a distinction of utmost importance. This is exemplified by a man in Florida who had died of a motorcycle crash but had been counted officially as a COVID death due to a past positive test.[14] Public Health Officer Dr. Raul Pino

---

[11] Lei Luo, PhD et al, <u>Contact Settings and Risk for Transmission in 3410 Close Contacts of Patients With COVID-19 in Guangzhou, China</u>, (August 13, 2020) https://www.acpjournals.org/doi/pdf/10.7326/M20-2671.
[12] Will Feuer and Noah Higgins-Dunn, <u>Asymptomatic spread of coronavirus is 'very rare,' WHO says</u>, (June 8, 2020) https://www.cnbc.com/2020/06/08/asymptomatic-coronavirus-patients-arent-spreading-new-infections-who-says.html.
[13] RJN Exhibit G, ¶3, Centers for Disease Control and Prevention ("CDC"), Archived Estimated Influenza Illnesses, Medical visits, Hospitalizations, and Deaths in the United States – 2017-2018 influenza season, https://www.cdc.gov/flu/about/burden/2017-2018/archive.htm (last visited August 15, 2020).
[14] RJN Exhibit H, Danielle Lama, <u>FOX 35 INVESTIGATES: Questions raised after fatal motorcycle crash listed as COVID-19 death</u>, Fox 35 Orlando (Updated July 18, 2020), https://www.fox35orlando.com/news/fox-35-investigates-questions-raised-after-fatal-motorcycle-crash-listed-as-covid-19-death

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF OPPOSITION TO DEFENDANT COUNTY OF SAN DIEGO'S MOTION TO DISMISS - 4

3:20-cv-00998

explains the inclusion, "But you could actually argue that it could have been the COVID-19 that caused him to crash." Due to this investigation the case was reviewed and he was removed as a 'COVID death.'[15]

From this, public health officials around the country, including Defendants, have enacted sweeping mandates and orders based on possible faulty data.

## C. Mask Effectiveness

Defendants claim Plaintiff admits masks are "minimally effective." ECF 11-1 at 6:3-4, ECF 12-1 at 8:13-14. Plaintiff only agrees N95 respirators could in theory reduce spread from symptomatic individuals. A narrowly tailored mask mandate based on the science would require only symptomatic individuals to wear N95 respirators for a limited defined period of time.

The certainty of the effectiveness of cloth face coverings remains unsettled. Randomized clinical trials (RCTs), the gold standard of science, repeatedly show no statistical effect in the prevention of community spread of influenza like illnesses (ILI).[16] One such study even states, "Cloth masks also had significantly higher rates of ILI compared with the control arm."[17]

History has also taught us that the compulsory wearing of masks has not been proven efficient to prevent the spread of epidemics.[18] In a study that could read as if it was published today, Dr. Kellogg conducted a study regarding the compulsory requirement of mask wearing during the 1918 Spanish Flu epidemic in California.[19] After studies conducted by The Department of Morbidity Statistics of California State Board Health did not show any influence of a mask on the spread

---

[15] *Id.*

[16] RJN Exhibit I, C Raina MacIntyre et al., <u>A cluster randomised trial of cloth masks compared with medical masks in healthcare workers</u>, (April 22, 2015) https://bmjopen.bmj.com/content/5/4/e006577.

[17] *Id.*

[18] RJN Exhibit J, W.H. Kellogg M.D. and Grace MacMillan, <u>AN EXPERIMENTAL STUDY OF THE EFFICACY OF GAUZE FACE MASKS</u>, American Journal of Public Health, 1920, https://doi.org/10.2105/AJPH.10.1.34.

[19] *Id.* at pg. 34 ¶1.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF OPPOSITION TO DEFENDANT COUNTY OF SAN DIEGO'S MOTION TO DISMISS - 5

3:20-cv-00998

of influenza, they downgraded their policy from compulsory to encouragement due to the inefficiency of masks in preventing the spread of influenza.[20] Dr. Kellogg noted that in San Francisco, where the masks were worn "cheerfully and universally…no effect of the epidemic curve was to be seen."[21] Similar to the mandate set forth today by Defendant County of San Diego, the mask mandate of 1918 was also enforced through criminal punishment.[22]

Further, Defendant San Diego County claims "The WHO recommends the use of face coverings in public when physical distancing with others cannot be maintained," ECF 11-1 at 7:11-13. but the source provided clearly states; "Non-medical, fabric masks are being used by many people in public areas, but there has been limited evidence on their effectiveness and WHO does not recommend their widespread use among the public for control of COVID-19."[23]

Defendants Newsom and Angell cite to a study completed by the Institute for Health Metrics and Evaluation which stated that California could prevent 2,800 fatalities by October 1, 2020 if 95% of the state wore a mask. ECF 12-1, RJN, Ex. 5. However, this study's model showed California fatalities would be limited to 8,745 with a mask and 11,631 without a mask by October 1st, 2020. *Id*. Currently in August, California is currently at 11,143 fatalities and closing in on the number predicted by the study if California did not wear masks, while implementing a statewide mask mandate.

### D. California "Data Glitch"

On July 25th, 2020, it was reported a computer server outage caused a glitch in COVID data reporting, causing an under reporting of COVID data to

---

[20] *Id*. at pg. 35 ¶3.
[21] *Id*. at pg. 35 ¶4.
[22] *Id*. at pg. 35 ¶8 (stating that citizens could be subject to arrest if they were seen not wearing a mask).
[23] RJN Exhibit K, World Health Organization, Q&A: Masks and COVID-19, https://www.who.int/emergencies/diseases/novel-coronavirus-2019/question-and-answers-hub/q-a-detail/q-a-on-covid-19-and-masks (June 7, 2020)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF OPPOSITION TO DEFENDANT COUNTY OF SAN DIEGO'S MOTION TO DISMISS - 6

3:20-cv-00998

Defendants Governor Newsom and Dr. Angell.[24] Up to the minute data is crucially important to Defendants Newsom and Angell as Defendant Newsom stressed the use of these real time numbers to "look at conditions as they change in real time, based upon the data, based upon local conditions."[25] California Assemblyman Kevin Kiley, called the backlog of information "disastrous" because in his words with "people's livelihoods hanging in the balance. It's just unacceptable."[26]

Just days later, on August 9th, 2020, Defendant Angell abruptly resigned by submitting her resignation letter to Defendant Newsom.[27] This data glitch raises the question of what data Defendants Newsom and Angell are relying on and whether that data is in fact supportive of sweeping executive actions.

### III. LEGAL STANDARD

Under Fed. R. Civ. P. 8(a) a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). On a Rule 12(b)(6) motion to dismiss, a district court must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d

---

[24] RJN Exhibit L, Amy Taxin, Janie Har, Official: California fixed glitch that backlogged COVID, Bakersfield.com (August 7th, 2020), https://www.bakersfield.com/ap/news/tech-glitch-holds-up-covid-data-as-california-hits-10k-dead/article_87ae41fe-cfd8-580c-8431-841312c1c6cf.html.
[25] *Id*.
[26] *Id*.
[27] RJN Exhibit M, Victoria Albert, California's top public health official resigns after massive coronavirus data glitch, CBS News (August 11th, 2020) https://www.cbsnews.com/news/dr-sonia-angell-california-top-public-health-official-resigns-coronavirus-data-glitch.

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF OPPOSITION TO
DEFENDANT COUNTY OF SAN DIEGO'S MOTION TO DISMISS - 7

3:20-cv-00998

977, 980 (9th Cir. 2002) (internal quotations and citations omitted). If a motion to dismiss is granted, leave to amend should follow unless additional facts "could not possibly cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (internal citations and quotations omitted).

## IV. ARGUMENT

### A. *Jacobson* and State Emergency Powers

The COVID-19 Pandemic has raised many legal issues throughout the country on the scope of state emergency powers and police powers given to health officials to help combat a contagious disease. Defendants cite from the seminal case on state powers during an epidemic, *Jacobson v. Commonwealth of Massachusetts* 197 U.S. 11 (1905). A case long cited by many litigants in the defense of broad powers granted to public and state officials.

However, with the advent of COVID-19, the legal community has entered a figurative "wild west" of legal issues in relation to civil rights and constitutional questions. Plaintiff does not dispute that public health officials have the right and the power under current California law to act in the best interests and protection of its citizenry, but instead questions the breadth and scope of those powers when faced with contradicting data and science.

Defendant San Diego County focuses on the broad strokes of *Jacobson* but fails to examine the nuisance of the argument at hand. ECF 11-1 at 15:18-23. Defendants Newsom and Angell echo this sentiment. ECF 12-1 at 15:7-15. The *Jacobson* case provides a two-factor test for courts to examine when examining the orders and actions of officials to combat a public health emergency. *Jacobson*, 197 U.S. 11 at 31. The two factors are (1) a real and substantial relation to the crisis and (2) must not represent 'plain, palpable' invasions of clearly protected rights. *Id.*.

The question then becomes whether the mask *mandate* (requiring individuals to wear facial coverings with threat of fine and imprisonment as opposed to a

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF OPPOSITION TO DEFENDANT COUNTY OF SAN DIEGO'S MOTION TO DISMISS - 8

3:20-cv-00998

strong recommendation) does possess a real and substantial relation to slowing the spread of COVID-19 in the State of California.

The State of California issued its statewide mask order on June 18, 2020 requiring California residents to wear facial coverings in certain situations. RJN Ex. B. On the date of issuance, the California government's COVID-19 webpage shows on a 14-day rolling average of 3,041 new positive cases of COVID-19 within California.[28] By July 21, 2020 the 14-day average of positive new COVID-19 cases increased to 9,077.[29] An increase of around three times the 14-day rolling average from the date of the mask mandate issuance. Comparatively, the 14-day rolling average of deaths from COVID-19 was on a slow decline before the issuance of the mask mandate.[30] As of August 17, 2020, the 14-day rolling average of deaths in California is now 132.[31] Finally, the amount of hospital patients who were either positive or suspected of having COVID-19 was 4,587.[32] On June 22, 2020, the number increased to 8,337, almost doubling. This after there was a slow decline in the same numbers since April 1st, 2020.[33] This increase continued all while Defendant Governor Newsom ordered 30 counties to shut down large swaths of industries again on July 13, 2020.[34]

This begs the question, is there a "real and substantial relation" of the requirement to wear masks to prevent the spread of COVID-19? By the State of California's own numbers; cases, deaths, and hospitalizations all increased tremendously since the date of the mask issuance after seeing a slow decline in all three areas.

---

[28] RJN Exhibit D, California Coronavirus COVID-19 Statewide Update, https://update.covid19.ca.gov/ (last visited August 18, 2020.)
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] RJN Exhibit D, California Coronavirus COVID-19 Statewide Update, https://update.covid19.ca.gov/ (last visited August 18, 2020.)
[34] RJN Exhibit N, Twitter, Governor Gavin Newsom (July 13, 2020) https://twitter.com/GavinNewsom/status/1282753656983449600?s=20

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF OPPOSITION TO DEFENDANT COUNTY OF SAN DIEGO'S MOTION TO DISMISS - 9

3:20-cv-00998

The facts of *Jacobson* are markedly different than the current mask mandate in the state of California. The plaintiff in *Jacobson* asserted that a mandatory vaccination to help stop the spread of smallpox was a violation of their constitutional rights. *Jacobson*, 197 U.S. 11 at 13. The Court found that to argue the smallpox vaccination had no real or substantial relation to protection of the public would go against consistent experience of many countries at that time. *Id*. at 31. At the time of *Jacobson* there was more validation for the use of vaccination after years of studies.[35] This differs from the current situation where the effectiveness of masks for COVID-19 does not garner near universal consensus as the smallpox vaccination in *Jacobson*.[36] Based on California's own data, there has not been a real or substantial relation to slowing the spread of COVID-19 since the mask mandate was executed.

On the CDC website there is a research page for 'Non-Pharmaceutical Interventions' (NPIs) which references several studies on mask effectiveness.[37] One study of three influenza pandemics in the 20th century concludes, "Although mechanistic studies support the potential effect of hand hygiene or face masks,

---

[35] *Jacobson* footnote † "The degree of protection afforded by vaccination thus became a question of great interest. Its extreme value was easily demonstrated by statistical researches. In England, in the last half of the eighteenth century, out of every 1,000 deaths, 96 occurred from smallpox; in the first half of the present century, out of every 1,000 deaths, but 35 were caused by that disease. The amount of mortality in a country by smallpox seems to bear a fixed relation to the extent to which vaccination is carried out In all England and Wales, for some years previous to 1853, the proportional mortality by smallpox was 21.9 to 1,000 deaths from all causes; in London it was but 16 to 1,000; in Ireland, where vaccination was much less general, it was 49 to 1,000, while in Connaught it was 60 to 1,000. On the other hand, in a number of European countries where vaccination was more or less compulsory, the proportionate number of deaths from smallpox about the same time varied from 2 per 1,000 of all causes in Bohemia, Lombardy, Venice, and Sweden, to 8.33 per 1,000 in Saxony. Although in many instances persons who had been vaccinated were attacked with smallpox in a more or less modified form, it was noticed that the persons so attacked had been commonly vaccinated many years previously. 16 American Cyclopedia, Vaccination (1883)."
[36] RJN Exhibit O, Thomas Burrows, <u>DOUBLE DUTCH Face masks are 'NOT necessary' and could even harm the fight against coronavirus, say Holland's top scientists</u>, The Sun, (August 3, 2020 17:00) ("From a medical point of view, there is no evidence of a medical effect of wearing face masks"…."There is no benefit and there may even be negative impact.") https://www.thesun.co.uk/news/uknews/12292821/face-masks-not-necessary-say-holland-scientists. RJN Exhibit P, Charles Daly and Bloomberg, 'We see no point in wearing a face mask,' Sweden's top virus expert says as he touts the country's improving COVID numbers, Fortune (July 29, 2020 2:41 am PDT), https://fortune.com/2020/07/29/no-point-in-wearing-mask-sweden-covid.
[37] RJN Exhibit Q, Centers for Disease Control and Prevention, <u>Nonpharmaceutical Interventions</u>, https://www.cdc.gov/nonpharmaceutical-interventions/tools-resources/published-research.html (Last visited August 17, 2020)

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF OPPOSITION TO
DEFENDANT COUNTY OF SAN DIEGO'S MOTION TO DISMISS - 10

evidence from 14 randomized controlled trials of these measures did not support a substantial effect on transmission of laboratory-confirmed influenza."[38]

Plaintiff agrees there are several mechanistic studies such as "filtration" that theorize partial effectiveness of masks, and these studies also show that N95 FIT tested respirators are the only masks with acceptable levels of short-term protection when used properly. The studies that support Defendants' assertions on cloth face coverings are based on theory and models, not in science or practice.

Further, studies have shown that contrary to consensus, cloth masks *increase* the incidence of influenza like illnesses (ILI) compared to the control. "Cloth masks also had significantly higher rates of ILI compared with the control arm."[39]

Defendant's claim that the *Jacobson* test is "easily met" is conclusory and ignores the nuisance of the current situation. It has been conceded by the Plaintiff that public health officials do have the right and power to safeguard their citizenry against contagious disease for the general welfare of their locality. However, this does not give the authorities unlimited and broad power.

*Jacobson* finishes with this statement; "that the police power of a state, whether exercised directly by the legislature, or by a local body acting under its authority, may be exerted in such circumstances, or by regulations so arbitrary and oppressive in particular cases, as to justify the interference of the courts to prevent wrong and oppression." *Jacobson*, 197 U.S. 11 at 38.

The data and science put forth by Plaintiff shows that the requirement of mask has no real or substantial relation, or effect, on the slowing the spread of COVID-19 in California to necessitate the actions of Defendants to require the wearing of facial coverings with a threat of fine or imprisonment.

---

[38] RJN Exhibit R, Jingyi Xiao et al., Nonpharmaceutical Measures for Pandemic Influenza in Nonhealthcare Settings—Personal Protective and Environmental Measures, Centers for Disease Control and Prevention (May 2020), ¶1, https://dx.doi.org/10.3201/eid2605.190994.
[39] RJN Exhibit J, C Raina MacIntyre et al., A cluster randomised trial of cloth masks compared with medical masks in healthcare workers, (April 22, 2015) https://pubmed.ncbi.nlm.nih.gov/25903751.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF OPPOSITION TO DEFENDANT COUNTY OF SAN DIEGO'S MOTION TO DISMISS - 11

3:20-cv-00998

**B. Plaintiffs Causes of Action Properly State a Claim**

A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of her claim which would entitle them to relief. *Strother v. Southern California Permanente Medical Group* 79 F.3d 859, 865 (1996). Plaintiff has presented sufficient facts to support their claim that Defendant's broad and sweeping actions have violated Plaintiff's rights.

**1. Violation of California's Police Power**

Defendant San Diego County mischaracterizes Plaintiff's position on police power by stating they recognize the police power afforded to them is "broad and powerful," with "a large amount of discretion delegated to public health officials to protect the public health." ECF 11-1 at 18:9-11. Defendant however fails to mention the court holding goes on to state police power, while broad and powerful, must not amount to an improper or arbitrary infringement of the constitutional rights of individuals. *Bacich v. Board of Control of California*, 23 Cal. 2d 343, 358 (1943). Further, it is imperative to point out the flaw in Defendants' belief that police power is so broad and powerful that it is unlimited and unchallengeable. This argument that police power grants unlimited power to officials is inconsistent with protecting constitutional rights:

> Since the police power has been equated with the 'power to govern' it has sometimes been too convenient to label all regulatory legislation as acts under the police power as though once an act was given that magic name the christening instilled the strength to bulldoze away everything lying within its path. Not so. Ours is a government of constitutional limitations; of checks and balances. Our system does not tolerate unrestrained overriding of the rights of individuals in the name of the police power. *Pacific Emp. Ins. Co. v. Industrial Commission* 219 Cal.App.2d 634, 640 (1963).

This is essentially the logic of Defendants' argument, as long as they act under the guise of police power, they are free to "bulldoze" everything in the name

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF OPPOSITION TO DEFENDANT COUNTY OF SAN DIEGO'S MOTION TO DISMISS - 12

3:20-cv-00998

protecting public health. While there remains large discretion granted under police power, it does not give way to the personal liberty of the citizen to be invaded under the disguise of a police regulation. *Jew Ho v. Williamson*, 103 F. 10, 19 (1900). In reviewing the regulation, it must be determined whether the purpose of such a regulation is reasonably related to meet its intended purpose. *Wholesale Tobacco Dealers Bureau of Southern California v. National Candy & Tobacco Co.*, 11 Cal.2d 634, 637 (1938). Based on the data presented by California and the supporting science presented by Plaintiff, it is apparent the requirement of facial coverings has not met the intended purpose of slowing the spread of COVID-19 within the state.

Police power must only be applied to existing conditions and when "'statutes and ordinances, which, after giving due weight to the new conditions, are found clearly not to conform to the Constitution, of course, must fall'. *Skalko v. City of Sunnyvale*, 14 Cal.2d 213, 216 (1939). After more than a month since the mask mandate was put into effect, the spread of COVID-19 has not slowed, but instead increased dramatically. Thus, in review of current conditions, the authority under the police power to order citizens to wear masks with threat of fine and imprisonment for noncompliance does not appropriately meet its intended purpose.

### 2. Violation of the Right to Privacy & Personal Medical Decisions

Defendant San Diego County attempts to equate the right to privacy with literal privacy by stating that wearing a mask affords *more* privacy, which can only be assumed to be a statement on how a facial covering hides your face. ECF 11-1 at 18:3. However, the right to privacy, or the right to be left alone, is an intrinsic right of American jurisprudence:

> No right is held more sacred, or is more carefully guarded by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF OPPOSITION TO DEFENDANT COUNTY OF SAN DIEGO'S MOTION TO DISMISS - 13

3:20-cv-00998

others, unless by clear and unquestionable authority of law. *Union Pac. R. Co. v. Botsford* 141 U.S. 250 (1891).

Plaintiff's argument stems from the questionable authority of Defendants under law to require one to wear a facial covering when such a practice does not reasonably relate, and has not been shown, to adequately prevent the spread of COVID-19. It is Plaintiff's right to determine whether they should use a facial covering to protect himself from COVID-19:

> Anglo American law starts with the premise of thorough-going self determination. It follows that each man is considered to be master of his own body, and he may, if he be of sound mind, expressly prohibit the performance of lifesaving surgery, or other medical treatment."
> *Thor v. Superior Court*, 5 Cal.4th 725, 736 (1993); *quoting Natanson v. Kline*, 186 Kan. 393, 406–407 (1960).

Plaintiff as a healthy individual possesses the right to determine on his own whether he should wear a mask for protection of his health.

### 3. Violation of Constitutional Right to Move Freely

The right to intrastate travel (which includes intramunicipal travel) is a basic human right protected by the United States and California Constitutions as a whole. *Tobe v. City of Santa Ana*, 9 Cal.4th 1069, 1100 (1995). Such a right is implicit in the concept of a democratic society and is one of the attributes of personal liberty under common law. *Id.*. Further, the right of intrastate travel has been recognized as a basic human right protected by article I, sections 7 and 24 of the California Constitution. *Id.*.

Although the United States Supreme Court has not specifically addressed the right to intrastate travel, it has alluded to its presence as a right. In *Kolender v. Lawson* 461 U.S. 352, 358 (1983), the court emphasized that a law prohibiting wandering the streets at night without identification implicated "consideration of

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF OPPOSITION TO DEFENDANT COUNTY OF SAN DIEGO'S MOTION TO DISMISS - 14

3:20-cv-00998

the constitutional right to freedom of movement." *See also Papachristou v. City of Jacksonville*, 405 U.S. 156, 164 (1972) (" 'wandering or strolling' " are "historically part of the amenities of life as we have known them".)

Defendant San Diego County's Order places an undue burden on Plaintiff's ability to move freely, such as wander or stroll in public, by stating that violation of their Order will result in a "fine, or imprisonment or both." RJN Exhibit C at ¶ 32. Similar to *Kolender*, if Plaintiff can be fined or imprisoned at any moment when walking around in public without a facial covering, then this constitutes and infringement on Plaintiff's right to move freely.

### 4. Violation of Cal. Const. Art. I, § 1 Right to Liberty

Defendant San Diego County asserts that a Plaintiff who is challenging a regulation enacted under the guise of police power must be *irrational*. ECF 11-1 at 22:27-28, 23:1-2. Plaintiff agrees with Defendant's assertion because the mask mandate as shown by data and science is irrational. As already argued, the mask mandate fails to slow the spread of COVID-19. To threaten Plaintiff's liberty by imposing a fine or imprisonment for failing to wear a facial covering when in public is impermissible. *See Ex parte Dees*, 46 Cal.App. 656, 660 (1920) (stating that a man may not be deprived of his liberty on an act that cannot be made unlawful).

Thus, by threatening Plaintiff with a fine or imprisonment (leading to loss of liberty) for failing to wear a facial covering as prescribed, the Defendant San Diego County's Order violates Plaintiff's right to liberty.

### C. Courts Are Able to Restrain Officials When Orders Are Arbitrary and Capricious

Defendants argue the government is effectively without limit and oversight when confronting a public health issue. ECF 11-1 at 16:18-23; ECF 12-1 at 15:7-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF OPPOSITION TO DEFENDANT COUNTY OF SAN DIEGO'S MOTION TO DISMISS - 15

3:20-cv-00998

10. Plaintiff believes this is a dangerous precedent to set for future public health

events.

Returning to *Jacobson*, in addition to granting the legislature broad power to

enact statutes to protect public health, it also provided that courts must act as a

back stop to ensure rights of individuals are not infringed:

> [I]f a statute purporting to have been enacted to protect the public
> health, the public morals, or the public safety, has no real or
> substantial relation to those objects, or is, beyond all question, a plain,
> palpable invasion of rights secured by the fundamental law, it is the
> duty of the courts to so adjudge, and thereby give effect to the
> Constitution. *Jacobson v. Commonwealth of Massachusetts*, 197 U.S.
> 11, 31 (1905).

Further, the court held that such power might go so far beyond what was

*reasonably required* in the name of safety, that courts shall act to protect the rights.

*Id.* at 28. Contrary to Defendants' argument that government is given unlimited

and unchecked power in times like these, that is simply not the case.

When statutes and orders go beyond what is substantially related to the goals

of such a statute or order must be reviewed by the court:

> [Courts] are at liberty— indeed, are under a solemn duty— to look at
> the substance of things, whenever they enter upon the inquiry whether
> the legislature has transcended the limits of its authority. If, therefore,
> a statute purporting to have been enacted to protect the public health,
> the public morals, or the public safety, has no real or
> substantial relation to those objects, or is a palpable invasion of rights
> secured by the fundamental law, it is the duty of the courts to so
> adjudge, and thereby give effect to the constitution. *Jew Ho v.*
> *Williamson*, 103 F. 10, 18 (1900).

While Defendants can argue the mask mandate is reasonable and rationally

related to the slowing of the spread of COVID-19, courts can examine whether a

less restrictive alternative can be fashioned so as not to impose on fundamental

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF OPPOSITION TO
DEFENDANT COUNTY OF SAN DIEGO'S MOTION TO DISMISS - 16

3:20-cv-00998

personal liberties. *See Shelton v. Tucker* 364 U.S. 479, 488 (1960) (arguing that courts can examine legislative action that infringes on personal liberties to determine if there is a less drastic measure available.) Courts play an active role in reviewing the actions of federal and state officials throughout our history. *See Armstrong v. Exceptional Child Center, Inc.* 575 U.S. 320, 327 (2015) (stating that the power of the courts to enjoin state and federal officials for unconstitutional actions dates back to England.)

Presently, Plaintiff faces an infringement on his personal liberties by the threat of loss of liberty and property if he does not wear a facial covering and is fined or imprisoned for doing so.

Surely this is a drastic measure to imagine imprisoning a citizen for failing to wear a facial covering as required by Defendant San Diego County's Order. Contrary to Defendant's assertion that Plaintiff seeks to "strike down a key COVID-19 measure." ECF 11-1 at 9:20. Plaintiff does not seek the remedy of banning masks altogether (certainly a drastic and unreasonable reaction to Defendants' Order and Guidance.) Instead a less restrictive alternative to the Order and Guidance would have it be altered from "mandatory" to "strong recommendation." This intention was relayed to Defendant San Diego County in their initial meet and confer but was never acted upon or further discussed.

With the science showing masks are only "minimally effective" against spreading COVID-19, and a month's worth of data showing a mandatory mask mandate has not slowed the spread, it is reasonable to assume a the results show requiring a mask has no substantial effect on slowing the spread of COVID-19.

A more reasonable and less restrictive alternative would be to properly inform the public how masks can help, urge them to do so as part of an overall strategy to combat the spread, and recommend that citizens wear them rather than mandate them with a threat of fine and imprisonment.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF OPPOSITION TO DEFENDANT COUNTY OF SAN DIEGO'S MOTION TO DISMISS - 17

3:20-cv-00998

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss. Should any of Defendant's Motion be granted, in any part, Plaintiff requests leave of the Court to file an amended complaint, including to allege additional facts or alternative causes of action regarding but not limited to any current facts relating to the effectiveness of facial coverings in slowing the spread of COVID-19.


Respectfully submitted,

Dated: August 24, 2020                          ARETE LAW A.P.C.


_____
Philip Mauriello Jr., Esq.
Attorney for the Plaintiff
ASHTON FORBES

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF OPPOSITION TO
DEFENDANT COUNTY OF SAN DIEGO'S MOTION TO DISMISS - 18

3:20-cv-00998